**Gerald R. PRATT, Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.**

**No. 91–1679.**

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 2, 1991.

Decided Feb. 12, 1992.

---

George H. Smith, Minneapolis, Minn., for appellant.

Roylene A. Champeaux, Minneapolis, Minn. (Edward P. Studzinski, on brief), for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

PER CURIAM.

This is a social security appeal. Gerald R. Pratt asserts error in the denial of his application for social security disability insurance benefits and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–433, 1381–1383c (1991). The district court granted summary judgment to the Secretary of Health and Human Services in appellant's action for judicial review of the Secretary's final decision denying his claims. We remand.

## I. BACKGROUND

Pratt, a forty-two-year-old bachelor, is a high school graduate with two years of vocational training as an electrician and one year of community college credits. He has past relevant work experience of four years as a machinist, five months as a lighting salesman, and ten years as a punch press operator. He last worked as a punch press operator on April 28, 1986, when his employer closed its business and terminated his job.

Pratt applied for disability insurance benefits and SSI on November 30 and December 1, 1987, alleging disability with an onset date of April 28, 1986, due to bursitis and tendinitis of the left shoulder and degenerative disease of the spine. He also alleges that he suffers from an emotional problem related to his other ailments which exacerbates his physical disabilities. Pratt's applications were denied initially and on reconsideration, and he requested and received a hearing before an administrative law judge.

The ALJ concluded from evidence offered at the hearing that Pratt suffered from bicipital tendinitis/bursitis of the left shoulder and pseudoarthrosis of the spine, but that these impairments were not equal to any listed in the social security regulations. The ALJ also concluded, however, that Pratt could not return to his past relevant work.

On review of the evidence from Pratt's psychological evaluations, the ALJ concluded that Pratt did not suffer from a medically determinable mental impairment. The ALJ found that because the only one of his symptoms that matched the listing of impairments was "thoughts of suicide," Pratt did not have an affective disorder.[1] Similarly, because Pratt's only listed symptom was an "unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury," the ALJ found Pratt did not have a somatoform disorder.[2] The ALJ stated that Pratt had "never pursued medical treatment for any mental impairment nor ha[d] he told any physician or other third party in the record about any possible mental impairment."

The ALJ thus concluded that Pratt retained the residual functional capacity to perform work that did not require lifting more than fifteen pounds or doing overhead work, with restrictions on bending, twisting, and stooping. Examples of such

---

1. An affective disorder is characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.04 (1991).

2. A somatoform disorder is defined as encompassing "physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A § 12.07.

work are benchwork, electronic assembly and inspection, and cashier positions. Because such jobs exist in substantial numbers in the State of Minnesota, the ALJ found Pratt not disabled.

The Appeals Council denied review, making the ALJ's determination the final decision of the Secretary. The district court granted summary judgment for the Secretary in Pratt's action for judicial review, and Pratt appeals.

## II. DISCUSSION

■ Pratt argues on appeal that the ALJ improperly discredited his subjective complaints of pain, failed to properly assess his psychological problems, and failed to consider the combined effect of his impairments. Our task on review is to determine whether substantial evidence in the record as a whole supports the Secretary's denial of benefits to Pratt. *See Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir.1987). In our review of the evidence, we must also take into account whatever in the record fairly detracts from its weight. *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir.1991).

As stated, it is not our task to review the evidence and make an independent decision. Neither is it our task to reverse the holding of the ALJ simply because there is evidence in the record which contradicts his findings. The test, we emphasize, is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. In this case, there is not.

Little precedential value will ensue from a detailed restatement of the facts adduced at the hearing. They are sufficiently set forth in the ALJ's decision. It is appropriate, however, to discuss the major issue raised by appellant on appeal: whether the ALJ properly addressed Pratt's alleged psychological problems and their effects, if any, on his shoulder and back disorders.

■ The ALJ erroneously found that Pratt had neither sought treatment for, nor told any physician about, any possible mental impairment. The record shows that Pratt had been prescribed Xanax for depression and anxiety in 1986.[3] He reported a "nerve problem" to a physician, Dr. Kraft, in 1986. In 1987, he told Dr. Ellen Snoxell, a psychologist, that he took Halcion for stress.[4] Pratt also underwent several psychological evaluations. He took the Minnesota Multi-phasic Personality Inventory (MMPI) in February 1987 and, although his results on the test fell essentially within normal limits, he was diagnosed as having an anxiety disorder. His second MMPI indicated psychological distress. The psychologist, Dr. Snoxell, recommended at that time that he be evaluated for depression. He was treated at Hennepin County Mental Health Center in February 1988, and psychiatrist Stephen Greenwald, M.D., diagnosed a schizotypal personality disorder. He was prescribed Doxepin, and BuSpar.[5] Pratt visited the Mental Health Center five times in March and April 1988. In July 1988, a psychiatrist, Dr. Haberle, completed a Psychiatric Technique Review Form on Pratt for the Social Security Administration.[6] Doctor Haberle concluded that Pratt suffered from schizotypal personality disorder but that it was not so severe as to be disabling.

Pratt took a third MMPI in August 1988 while awaiting surgery at the Veteran's Administration Medical Center. His profile was highly elevated, indicating "psychological turmoil of significant proportions." Dr. Gordon Braatz, the interpreting psychologist, noted a high degree of somatic concern with a tendency toward dramatized

---

3. Xanax is a central nervous system depressant used to treat anxiety disorders or anxiety associated with depression. *Physician's Desk Reference* 2253 (44th ed. 1990).

4. Halcion is a hypnotic ordinarily prescribed for insomnia. *Physician's Desk Reference, supra,* at 2226.

5. Doxepin is a drug prescribed for psychoneurotic patients with depression and/or anxiety

and BuSpar is an anti-anxiety medication. *See Physician's Desk Reference, supra,* at 1848, 1308.

6. The Psychiatric Review Technique Form was attached to Pratt's initial denial of benefits. Interestingly, it was not mentioned in the ALJ's decision and did not form the basis of his conclusions. It involved a different malady than those addressed in the ALJ's opinion.

and possibly exaggerated somatic complaints. Dr. Braatz concluded that "[t]he three MMPI's obtained over the past eighteen months show a progressive intensification of the patient's psychological symptoms." Pratt was examined by John E. Mulvahill, M.D., a psychiatrist, for the Minnesota Social Security Disability Determination Services on May 18, 1989. Dr. Mulvahill concluded that Pratt had a somatoform pain disorder.

In short, the five mental health professionals whose reports appear in the record all agreed that Pratt suffered from psychological distress. Pratt's MMPI results showed progressive intensification of his symptoms over time. Instead of crediting the opinions of the mental health professionals, the ALJ substituted his own unsubstantiated conclusion concerning a mental impairment for the express diagnoses of Pratt's examining psychiatrists and psychologists. Such disregard of the record constitutes reversible error. *See, e.g., Delrosa v. Sullivan,* 922 F.2d 480, 484–85 (8th Cir.1991).

■ The ALJ found that because Pratt's symptoms did not match the listing of impairments for affective or somatoform disorders, Pratt did not suffer from a medically determinable mental impairment.[7] The ALJ's conclusion misapplies the Social Security regulations. A mental disorder need not be of listing-level severity in order to be medically determinable within the meaning of the Social Security regulations. To establish the existence of a medically determinable disorder, the claimant need only meet one or more of the clinical findings criteria. *See* 20 C.F.R. § 404.1520a; 20

C.F.R. pt. 404, subpt. P, app. 1, pt. A, § 12.00(B), at 377 (the purpose for including the clinical findings criteria is to medically substantiate the presence of a mental disorder). The ALJ thus erred in concluding that Pratt's failure to meet all the criteria for affective or somatoform disorders meant that he suffered from no medically determinable impairment.

■ The Secretary has supplemented the familiar five-step sequential process for generally evaluating a claimant's eligibility for benefits with additional regulations dealing specifically with mental impairments. *See* 20 C.F.R. § 404.1520a (1991). A special procedure must be followed at each level of administrative review. *Id.* § 404.1520a(a). The regulations also require that the steps of the procedure are to be documented at each level by completion of a standard document, the "Psychiatric Technique Review Form." *See id.* § 404.-1520a(d). The form must be attached to the ALJ's decision. *Id.* § 404.1520a(d)(2).

The ALJ did not follow those procedures in this case. Instead, the ALJ confused the required sequential steps of the evaluation process and misconstrued the regulations. He also neglected to complete the required Psychiatric Technique Review Form. These errors require a remand.[8] *See Stambaugh v. Sullivan,* 929 F.2d 292, 296 (7th Cir.1991); *Hill v. Sullivan,* 924 F.2d 972, 975 (10th Cir.1991).

The sequential process for evaluating mental impairments is set out in 20 C.F.R. § 404.1520a. The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists.

---

7. The criteria in the listing of impairments describe presumptively disabling conditions. *See* 20 C.F.R. § 404.1525(a) (1991); 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A § 12.00(A), at 377 (1991). The listing for each mental disorder other than mental retardation or substance addiction consists of two parts, a set of clinical findings (paragraph A criteria) and a set of functional restrictions (paragraph B criteria). 20 C.F.R. pt. 404, subpt. P, app. 1, pt. A § 12.-00(A), at 376. A claimant who meets one or more of the clinical findings criteria and two or three of the functional restrictions criteria is presumed to be disabled by the mental disorder in question. *See id.*

8. We need not address the issue of whether mere failure to complete the form would necessarily constitute reversible error if it were clear from the decision that the ALJ had properly evaluated the impairment. In this case, the ALJ did not evaluate the evidence properly. We note that completion of the form is mandated by the regulations, and, as our discussion illustrates, the form provides a beneficial framework for the application of complicated regulations. We urge ALJs to employ the device in future cases.

*Id.* § 404.1520a(b)(1). These are gleaned from a mental status exam or psychiatric history, *id.*, and must be established by medical evidence consisting of signs, symptoms, and laboratory findings. *See id.* § 404.1508. If a mental impairment is found, as it should have been in this case,[9] the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. *Id.* § 404.-1520a(b)(2).

The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work. *Id.* § 404.1520a(b)(3). Those areas are: activities of daily living; social functioning; concentration, persistence or pace; and deterioration or decompensation in work or work-like settings. *Id.* The degree of functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform those work-related functions.[10] *Id.* After rating the degree of functional loss, the ALJ is to determine the severity of the mental impairments with reference to the ratings. *Id.* § 404.-1520a(c). If the mental impairment is severe, then the ALJ must determine whether it meets or equals a listed mental disorder. *Id.* § 404.1520a(c)(2).[11] This is done by comparing the presence of medical con-

clusions and the rating of functional loss against the paragraph A and B criteria of the appropriate listed mental disorders. *Id.* If the claimant has a severe impairment, but the impairment neither meets or equals the listing, then the ALJ is to do a residual functional capacity assessment.[12] *See id.* § 404.1520a(c)(3).

In this case, the record indicates that Pratt had a medically determinable mental impairment. The ALJ never assessed its severity under the above procedures. Instead, he concluded that the impairment did not exist because it did not meet or equal the listing. Under the regulations, however, a failure of the claimant's symptoms to match the listings would require the ALJ to perform the sixth step of assessing the claimant's residual functional capacity. *See id.* The ALJ also neglected this step of the procedure.

 Because the ALJ erroneously concluded that Pratt suffered from no medically determinable mental impairment, he failed to consider the effects of such an impairment in combination with the effects of Pratt's physical impairments on Pratt's residual functional capacity. This failure violates the Social Security Act and constitutes reversible error. *See* 42 U.S.C.

9. Although the ALJ acknowledged that Pratt presented medical evidence of a somatoform disorder in that he had been diagnosed as having an "unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that he has a serious disease or injury," the ALJ found that Pratt did not have a medically determinable mental disorder. As noted, this conclusion was erroneous.

10. For the first two areas (activities of daily living and social functioning), the rating of limitation is based upon the following five-point scale: none, slight, moderate, marked, and extreme. For the third area (concentration, persistence, or pace), the following five-point scale is used: never, seldom, often, frequent, and constant. For the fourth area (deterioration or decompensation in work or work-like settings), the following four-point scale is used: never, once or twice, repeated, or continual. *Id.* § 404.1520a(b)(3). This procedure is set forth in the form of a chart on the standard "Psychiatric Technique Review Form." These categories correspond with the paragraph B criteria of the

listings of mental disorders. *See, e.g.,* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.07 B.

11. Ratings above "marked," "frequent," or "repeated" are degrees of limitation which are incompatible with the ability to perform the work-related functions. 20 C.F.R. § 404.1520a(b)(3). In other words, these degrees of limitation satisfy the listings. Conversely, ratings of "none or slight" in the first and second areas, "never or seldom" in the third area and "never" in the fourth area generally indicate that an impairment is not severe unless evidence indicates otherwise. *Id.* § 404.1520a(c)(1).

12. A claimant with ratings of "moderate" in the first and second areas, "often" in the third area, and "once/never" in the fourth area has neither a presumptively non-severe impairment nor a presumptively disabling impairment. These in-between ratings result in findings of mental disorders which do not meet the paragraph B criteria but are nonetheless disabling within the meaning of the regulations.

§ 423(d)(2)(B) (1991); *Anderson v. Heckler,* 805 F.2d 801, 805 (8th Cir.1986).

 Similarly, the ALJ's failure to properly evaluate Pratt's alleged mental disorder influences his evaluation of Pratt's subjective complaints of pain under the standards set forth in *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984). The ALJ's conclusion regarding Pratt's credibility rests on erroneous factual findings and a failure to examine the possibility that a psychological impairment aggravates Pratt's perception of pain. Accordingly, substantial evidence in the record as a whole fails to support the ALJ's discounting of Pratt's subjective complaints.

 Also, the ALJ's failure to include Pratt's mental impairments in the hypothetical questions posed to the vocational expert rendered those questions defective. *See O'Leary v. Schweiker,* 710 F.2d 1334, 1343 (8th Cir.1983) (hypothetical question posed to vocational expert must precisely set out all claimant's impairments). Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision. *Ekeland v. Bowen,* 899 F.2d 719, 722 (8th Cir.1990).

## III. CONCLUSION

The ALJ failed to follow the mandatory procedure for evaluating mental impairments and neglected to document the evaluation with a Psychiatric Technique Review Form as required by the regulations. Because of these failures and the additional errors that followed them, we reverse and instruct the district court to remand to the Secretary for proceedings consistent with this opinion.