**Charles E. FOUNTAIN, Petitioner,**

**v.**

**RAILROAD RETIREMENT BOARD, Respondent.**

**No. 95–3028.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1996.

Decided May 30, 1996.

James Warren Stanley, Jr., North Little Rock, AR, for appellant.

Michael C. Litt, Chicago, IL, for appellee.

Before BEAM and MORRIS SHEPPARD ARNOLD, Circuit Judges, and JONES,* District Judge.

BEAM, Circuit Judge.

Charles Fountain appeals the Railroad Retirement Board's denial of his application for a disability annuity under the Railroad Retirement Act. He asserts that the Board's decision is not supported by substantial evidence. We affirm.

* The HONORABLE JOHN B. JONES, United States District Judge for the District of South Dakota, sitting by designation.

## I. BACKGROUND

Fountain was born in 1950. He has three years of college education. He was employed by Union Pacific Railroad (the Railroad) beginning in 1977 as a brakeman/switchman, a hostler,[1] and later a locomotive engineer. In 1988, he injured his back throwing a switch. He underwent surgery on his back in 1990. After Fountain and the Railroad settled his claim for damages arising out of his work-related injury, he was dismissed from the Railroad.

Fountain applied for a disability annuity on January 24, 1992, alleging disability based on his back injury and a liver disorder. His application was denied initially and on reconsideration. He then appealed to the Board's Bureau of Hearings and Appeals and was granted a hearing.

At the hearing, Fountain testified that he wanted to return to work as an engineer, but that the Railroad did not think he could handle the physical demands of the work. He stated that he believed he could return to work as an engineer if allowed to alternate periods of sitting and standing. He also testified that he was depressed because he was not able to return to work as an engineer.[2] His daily activities include watching television and reading. He is able to drive a car, although he does not drive much. He testified that he is able to stand for about thirty minutes before experiencing back pain and that sitting for long periods causes him pain. A friend testified and corroborated Fountain's testimony.

A vocational counselor testified that a person with Fountain's limitations could perform the functions of a locomotive engineer, which he characterized as light to medium in exertion, but not those of a brakeman/switchman or a hostler, which he characterized as heavy. He also testified that there were other light jobs in the national economy that a person with Fountain's limitations could perform.

The hearing officer affirmed the denial of benefits. He found that Fountain retains the capacity for a broad range of light work despite his limitations and, therefore, is not entitled to a disability annuity. Fountain appealed that decision, but the Board adopted and affirmed the decision of the hearing officer. This appeal followed.

On appeal, Fountain contends that the decision of the hearing officer is not supported by substantial evidence because the hearing officer: 1) failed to make adequate credibility findings; 2) failed to complete a Psychiatric Review Technique Form; and 3) failed to consider Fountain's impairments in combination.

## II. DISCUSSION

■ Section 2(a)(1)(v) of the Railroad Retirement Act, 45 U.S.C. § 231a(a)(1)(v), provides for an annuity for "individuals whose permanent physical or mental condition is such that they are unable to engage in any regular employment." This provision is analogous to the disability provisions of the Social Security Act, 42 U.S.C. § 301 et seq., and the Board's disability regulations are substantively identical to the social security regulations. *See* 20 C.F.R. § 220.1 et seq. Accordingly, we evaluate this case with reference to social security case law. *See Soger v. Railroad Ret. Bd.,* 974 F.2d 90, 92 (8th Cir.1992).

■ Our task on review is to determine if the Board's decision is supported by substantial evidence, is not arbitrary, and has a reasonable basis in law. *Id.* To do so, we must evaluate the evidence in the record which supports the Board's decision as well as that which detracts from it. *Turley v. Sullivan,* 939 F.2d 524, 528 (8th Cir.1991). It is not our task to review the evidence and make an independent decision. Nor is it our task to reverse the holding of the hearing officer simply because there is evidence in the record that contradicts the hearing offi-

---

**1.** A hostler is an employee who moves and services trains after their regular runs or who does the maintenance work on large machines. Random House Dictionary of the English Language, Unabridged 925 (2nd ed. 1983).

**2.** Because Fountain had testified about depression and mental and emotional problems, the hearing officer ordered a psychiatric examination of Fountain. Fountain was examined by a psychiatrist, but failed to report for the additional testing the psychiatrist requested.

cer's findings. The test, we emphasize, is whether there is substantial evidence in the record as a whole that supports the decision of the hearing officer. In this case, substantial evidence supports the decision.

Under the social security and railroad retirement guidelines, a hearing officer makes a sequential determination. *Soger*, 974 F.2d at 93. The hearing officer must first determine whether the claimant is engaged in substantial work activity; if so, the claimant is not disabled. *Id.* If the claimant is not engaged in substantial gainful activity, the hearing officer must determine whether the claimant is suffering from a medically determinable impairment such that the claimant cannot perform basic work-related functions. *Id.* If the claimant has one of the impairments listed in Appendix 1 to Subpart P of the guidelines ("the listing"), the claimant is conclusively disabled. If the claimant does not have a listed impairment, the hearing officer must determine if the claimant can return to his past relevant work. If so, the claimant is not disabled. If not, the final determination is whether there is any regular employment the claimant can perform, taking into consideration: (1) the claimant's residual functional capacity and his age, education and work experience; and (2) the availability of jobs in the national economy that a person of the claimant's limitations and qualifications can perform. *Id.*

■ Also, when the determination hinges on an evaluation of subjective complaints (such as pain), the hearing officer must evaluate the claimant's subjective complaints with reference to the standards set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984).[3] Where there is evidence of a medically determinable mental impairment, a hearing officer must follow special procedures and is urged to complete a Psychiatric Review Technique Form. *Montgomery v. Shalala*, 30 F.3d 98, 99–100 (8th Cir.1994); *see generally*, 20 C.F.R. §§ 404.1520(a) and 416.920(a).

In this case, the hearing officer found that Fountain suffers from a back impairment that significantly limits his ability to engage in regular employment, but that the impairment does not meet or equal the listing of (presumptively disabling) impairments. 20 C.F.R. § 404.1525(a); 20 C.F.R. pt. 404 subpt. P, app. 1, pt. A. He acknowledged that Fountain also suffers from obesity, hypertension and liver disease, but found that these disorders similarly do not meet the listings. Consequently, the hearing officer found, based on the medical records, vocational testimony and Fountain's own statements, that Fountain could return to his former work as a locomotive engineer. The hearing officer alternatively found that, even if Fountain could not return to his former work, he could perform a wide range of light work. The hearing officer concluded there were no grounds for a finding that Fountain suffers from a disabling emotional impairment.

■ Fountain first argues that, in making this determination, the hearing officer did not properly consider his subjective complaints of pain. While there is little doubt that Fountain experiences pain, the question we must address is whether the pain is so severe that he cannot perform light or sedentary work. *See Robinson v. Sullivan*, 956 F.2d 836, 839 (8th Cir.1992).

■ The record shows that the hearing officer discounted Fountain's complaints of severe pain partly because of Fountain's equivocal statements. Fountain himself professed his ability to return to his former engineer position. The record shows that Fountain was offered a position as a security guard, but declined it as a "step down." The record also contains evidence that Fountain refused employment as a car salesman out of fear that he would earn too much money to qualify for disability. The hearing officer noted that Fountain has not consulted medical professionals about his back pain since March 1991. Fountain testified that he takes

---

**3.** Specifically, the hearing officer must give full consideration to all related evidence, including claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claim-

ant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, and side-effects of medication; and (5) functional restrictions. *Polaski*, 739 F.2d at 1322.

approximately seven Tylenol # 4[4] capsules per week to control his pain, but later stated that he takes only two capsules per week and could easily stop taking the medication if he were working as an engineer again. Under the circumstances, we find the hearing officer's credibility determination is supported by substantial evidence.

■ Fountain next asserts error in the hearing officer's failure to complete a Psychological Review Technique Form (PRTF). Under Social Security regulations, completion of that form is generally required when evidence of a medically determinable mental impairment has been presented.[5] *See Pratt v. Sullivan,* 956 F.2d 830, 834 n. 8 (8th Cir.1992). However, not all failures to complete the form amount to reversible error. *Id.* This case fits within that small category of cases in which the failure to complete a PRTF is harmless error. If it is clear that a hearing officer has correctly considered an allegation of a mental impairment, the formality of completing a PRTF may not be required. *See, e.g., Hardy v. Chater,* 64 F.3d 405, 408 (8th Cir.1995) (authorizing an ALJ to complete a PRTF without the assistance of a mental health professional where there was no evidence that a claimant was mentally impaired other than a history of controllable alcohol abuse).

■ Here, there is no credible evidence that Fountain suffers from a medically determinable mental impairment. Fountain did not include any allegation of a mental impairment in his original application for benefits. At the hearing, Fountain testified that he was depressed. He stated that his depres-sion was due to his failure to obtain employment as a locomotive engineer. The record shows that Fountain was examined by a psychologist in 1991 who reported that Fountain "has low energy depression, secondary to his situation" and that his "primary problem[ ] involves reactive depression in an otherwise well adjusted person." The psychologist concluded that "it is certainly hoped that he can return to his previous employment" and that "some residential pain treatment may be in order to assist this process." The same psychologist diagnosed Fountain in 1993 as suffering from dysthymia,[6] generalized anxiety and psychological factors affecting his physical condition, but noted a reasonable prognosis for rehabilitation. The consultative psychiatrist appointed by the hearing officer to examine Fountain reported that the symptoms noted by the psychologist in 1993 had abated. He stated, "[a]t this point I see absolutely no evidence of a primary psychiatric illness" and that although Fountain was "suffering from difficulties in adjustment in his sedentary life, from a psychological standpoint I see no reason to prevent him from returning to work." Fountain's treating physician checked "no" to the question, "[i]s there a past or present psychological problem that might interfere with patient's ability to work?" on the Attending Physician's Statement of Functional Capacity.

Moreover, Fountain was asked by the consulting psychiatrist to return for further psychiatric testing, but he failed to do so. It thus appears that any failure or inability of the psychiatrist to complete the PRTF is of Fountain's own making. The Railroad Retirement Board "may find that the claimant

---

**4.** Tylenol # 4 is acetaminophen (a peripherally acting analgesic) combined with codeine (a centrally acting analgesic). It is prescribed for the relief of mild to moderately severe pain. Physician's Desk Reference 1473–74 (49th ed. 1995).

**5.** Although the Board is not technically mandated to complete the form under 20 C.F.R. § 220.101, the Board must nonetheless follow the same special procedure and analysis to evaluate mental disorders as set forth in the Social Security Regulations, 20 C.F.R. § 404.1520a(a)–(c). The Board must use the procedure to "record pertinent findings and rate the degree of functional loss," 20 C.F.R. § 220.101(b), and must "incorporate the pertinent findings and conclusions based on this procedure in its decision rationale" at all adjudicative levels. 20 C.F.R. § 220.101(c)(4). The required completion of a form in the Social Security regulations at 20 C.F.R. § 404.1520a(d) merely catalogs the requirements set forth for analysis of mental disorders.

**6.** Dysthymia is a mood disorder characterized by feelings of depression (sad, blue, low, down in the dumps) and loss of interest or pleasure in one's usual activities and in which the associated symptoms have persisted for more than two years but are not severe enough to meet the criteria for major depression. Dorland's Illustrated Medical Dictionary 519 (28th ed. 1994).

is not disabled if he or she does not have good reason for failing or refusing to take part in a consultative examination or test which was arranged by the Board." 20 C.F.R. § 220.52(a). Fountain has put forward no excuse for his failure. Under the circumstances, we conclude that the failure of the hearing officer to complete the PRTF is harmless error. It is clear to us that the hearing officer properly evaluated Fountain's mental condition. *See Pratt,* 956 F.2d at 834 n. 8.

█ Fountain last contends that the hearing officer failed to consider his impairments in combination. The record shows that the hearing officer properly discounted the severity of Fountain's emotional condition and therefore did not consider the impairment. An ALJ need not consider in combination an impairment that is factually unsupported. *See, e.g., Cruse v. Bowen,* 867 F.2d 1183, 1187 (8th Cir.1989) (ALJ must include only those impairments supported by reasonable and substantial evidence in a hypothetical question posed to a vocational expert).

## III. CONCLUSION

For the reasons stated, the decision of the Railroad Retirement Board is affirmed.