# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3963

_____

| | | |
|---|---|---|
| Donald E. Conley, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Pitney Bowes, A Corporation; | * | Appeal from the United States |
| Pitney Bowes Long Term Disability | * | District Court for the Eastern |
| Plan; George B. Harvey and | * | District of Missouri. |
| Carmine F. Adimando, As Trustees | * | |
| of Pitney Bowes Long Term | * | |
| Disability Plan; Pitney Bowes Group | * | |
| Life Insurance Plan; Pitney Bowes | * | |
| Major Medical Expense Plan; Pitney | * | |
| Bowes Dental Expense Plan; and | * | |
| Michael Critelli, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: February 11, 1999

Filed: May 7, 1999

_____

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Donald Conley was injured in an automobile accident while working for Pitney Bowes. He received short-term disability benefits for a time after the accident and was then placed on long-term disability status, as provided for by the Pitney Bowes employee welfare plan. The terms of the plan state that in order to receive long-term disability benefits during the first 12 months after an employee allegedly becomes totally disabled, the employee needs only to be "unable to perform his own occupation." In order to receive long-term disability benefits for more than 12 months, however, an employee needs to be "unable ... to engage in any gainful occupation or profession for which he is, or could become, reasonably suited by education, experience, or training."

Pitney Bowes informed Mr. Conley by letter that his long-term disability benefits would be terminated after 12 months because he did not meet the stricter standard for additional benefits. Mr. Conley did not respond to the letter and sometime later he was given the choice of taking three months of personal leave or resigning. Mr. Conley then replied that he was unable to return to work at that time but hoped that he would eventually be able to do so; he also announced his intention to sue Pitney Bowes for the continuation of his long-term disability benefits. Pitney Bowes heard nothing more from Mr. Conley and eventually informed him that his employment was terminated.

Mr. Conley then sued Pitney Bowes under the Employee Retirement Income Security Act (ERISA), *see* 29 U.S.C. §§ 1001-1461, seeking review of the denial of additional long-term disability benefits, *see* 29 U.S.C. § 1132(a)(1)(B), § 1132(a)(3), and also alleging breach of fiduciary duty, *see* 29 U.S.C. § 1109(a), § 1132(a)(2), § 1132(a)(3), and wrongful discharge, *see* 29 U.S.C. § 1140. The trial court[1]

_____

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

dismissed the fiduciary duty claim under Fed. R. Civ. P. 12(b)(6), *see Conley v. Pitney Bowes, Inc.*, 1997 WL 695581 (E.D. Mo. Jan. 24, 1997).

At a subsequent bench trial, the court reviewed the plan administrators' decision to deny benefits, considering only the administrative record that existed at the time of the plan administrators' decision, and concluded that the denial was reasonable and supported by substantial evidence. The trial court added that if it were to review the evidence *de novo*, including some that the plan administrators did not have before them, the court itself would conclude that Mr. Conley's alleged injury lacked believability and that he did not meet the requirements for additional long-term disability benefits under the plan. Finally, the trial court found that Pitney Bowes did not wrongfully discharge Mr. Conley, *see Conley v. Pitney Bowes, Inc.*, 978 F. Supp. 892 (E.D. Mo. 1997). *See also Conley v. Pitney Bowes*, 34 F.3d 714 (8th Cir. 1994). Mr. Conley appeals, and we affirm.

## I.

Mr. Conley argues that the trial court should not have dismissed his claim for breach of fiduciary duty. Mr. Conley described the alleged fiduciary violations as failure to provide him with proper notice of his opportunity to appeal, failure to maintain a complete administrative record, and failure to conduct a full and impartial investigation of his condition. Mr. Conley sought equitable relief in the form of a restoration to him of past and future additional long-term disability benefits; he also sought reform of the claim procedure generally and removal of the fiduciaries or the appointment of an ombudsman.

Part of the enforcement statute for ERISA, *see* 29 U.S.C. § 1132(a)(2), provides a cause of action for breach of fiduciary duty under 29 U.S.C. § 1109(a), which states that a fiduciary who breaches his or her duty is personally liable for losses to the plan and subject to "such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. " As the trial court

-3-

noted, however, § 1109(a) provides relief only to a plan and not to individual beneficiaries. *See Varity Corp. v. Howe,* 516 U.S. 489, 515 (1996), *see also id.* at 509. Mr. Conley therefore does not have a cause of action for the restoration of additional long-term disability benefits under § 1132(a)(2) in conjunction with § 1109(a). Although § 1132(a)(2) does authorize a participant or beneficiary to seek relief for a plan, Mr. Conley has not shown how reform of the claim procedure or removal of the fiduciaries will remedy the harms he has allegedly suffered, nor has he produced evidence of a pattern or practice of fiduciary violations that require reform. We thus conclude that Mr. Conley has not stated a claim for which relief can be granted under § 1132(a)(2), either for himself or for the plan as a whole.

Nor does Mr. Conley have a claim for equitable relief in the form of benefits under § 1132(a)(3)(B), which provides a participant, beneficiary, or fiduciary with an action to obtain appropriate equitable relief to redress violations of the provisions of a plan or to enforce any such provisions. We have held that where a plaintiff is "provided adequate relief by [the] right to bring a claim for benefits under ... § 1132(a)(1)(B)," the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B). *Wald v. Southwestern Bell Corporation Customcare Medical Plan*, 83 F.3d 1002, 1006 (8th Cir. 1996). Mr. Conley has a claim for benefits under § 1132(a)(1)(B) and therefore may not seek the same benefits in the form of equitable relief under § 1132(a)(3)(B). Nor may he bring an action for plan-wide relief under § 1132(a)(3)(A), since, as noted above, he has not pleaded a systematic error or abuse in need of reform. We therefore affirm the trial court's dismissal of Mr. Conley's claim for breach of fiduciary duty.

## II.

Mr. Conley further asserts that the trial court erred when it found in favor of the defendants on his claim for additional long-term disability benefits. We review the trial court's findings of fact for clear error and its conclusions of law *de novo*. *See*

*Planned Parenthood of Greater Iowa, Inc. v. Atchison*, 126 F.3d 1042, 1048 (8th Cir. 1997).

Mr. Conley first contends that the plan administrators and the trial court gave too much weight to the diagnosis of Dr. Daniel Phillips, a physician who regularly conducts examinations for insurer-defendants in workers' compensation claims. Mr. Conley suggests that Dr. Phillips's finding of minimal objective symptoms was biased and that the 8 percent permanent partial disability rating that Dr. Phillips gave to him was meaningless. Second, Mr. Conley argues that chronic pain itself constituted a disability and that the plan administrators and the trial court ignored his evidence of disabling pain, including the fact that he was taking narcotics, the fact that several doctors recommended surgery as a possible option, and the reports of a nurse who witnessed him moving with difficulty.

There was, however, considerable evidence in the record besides Dr. Phillips's report to support the finding that Mr. Conley was not totally disabled as defined by the plan. The trial court was in the best position, moreover, to judge the credibility of Mr. Conley's testimony with respect to pain. We cannot say that "on the entire evidence" we are "left with the definite and firm conviction that a mistake has been committed," as we must to do in order to find a trial court's factual findings clearly erroneous. *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

### III.

Mr. Conley also maintains that the trial court committed numerous errors of law. First, he objects to the standard of review that the trial court applied to the defendants' determination that he was not eligible for additional long-term disability benefits. The trial court correctly noted that since the terms of the plan grant explicit discretionary authority to the employee benefits committee to construe the plan and to determine a claimant's eligibility for benefits, the deferential "abuse of discretion" standard of review would ordinarily be appropriate. *See Firestone Tire and Rubber*

*Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Donaho v. FMC Corp.*, 74 F.3d 894, 898 (8th Cir. 1996). Where a claimant is able to point to a significant procedural irregularity that resulted in a serious breach of the administrator's fiduciary duty, however, a stricter and less deferential standard may apply. *See Wald*, 83 F.3d at 1007. Mr. Conley contended at trial that this stricter standard was the appropriate one for his case.

The trial court was disturbed by two apparent violations of the provisions of the plan that might have amounted to a significant procedural irregularity, namely, the unauthorized delegation of decision-making power to the medical director of the defendants' disability department and the absence from the records of a written explanation of the rationale for the decision that Mr. Conley was not totally disabled (as defined by the plan). The trial court decided that it did not need to reach a conclusion on the standard of review, however, because it would uphold the defendants' decision under either standard. Indeed, the trial court said that its conclusion would be the same if it applied a *de novo* standard of review to the record established by Pitney Bowes at the time of the decision to deny additional long-term disability benefits to Mr. Conley; the trial court also stated that its conclusion would only be further bolstered by a consideration of supplemental evidence offered by the parties beyond that contained in the administrative record.

Mr. Conley asserts that the trial court maintained throughout the trial, over his objection, that it would apply an abuse of discretion standard of review and that it adopted a stricter standard only after the trial was over. Mr. Conley contends that this shift undermined his ability to present his case effectively. He does not, however, indicate what he would have done differently had he known that the trial court would use the stricter scrutiny that he felt was appropriate. Since Mr. Conley had to present a stronger case under the deferential standard that he believed that the trial court was applying, moreover, we fail to see how he was harmed if the trial court instead applied a stricter, less deferential standard of review.

## IV.

Mr. Conley further maintains that the trial court should not have allowed the defendants to introduce new evidence and should not have considered the defendants' *post hoc* explanations for their decision to deny him additional long-term disability benefits. It is true that in reviewing a denial of benefits under an employee welfare plan subject to ERISA, a court must focus on the evidence available to the plan administrators at the time of their decision and may not admit new evidence or consider *post hoc* rationales. *See Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998), and *Short v. Central States, Southeast and Southwest Areas Pension Fund*, 729 F.2d 567, 571 (8th Cir. 1984). This is so even in the case of *de novo* review unless there is good cause to depart from the general rule, as the trial court itself pointed out. *See, e.g., Donatelli v. Home Insurance Co.*, 992 F.2d 763, 765 (8th Cir. 1993). But the trial court in Mr. Conley's case did not consider any evidence or reasoning outside the record until it noted that *de novo* review on an expanded record would produce the same conclusion. In other words, Mr. Conley was no better off when the trial court considered only the existing record (as he had requested).

Mr. Conley also makes the more serious allegation that the trial court restricted him to the administrative record but allowed the defendants to introduce new evidence that was favorable to them. Specifically, Mr. Conley alleges that the trial court refused to consider the deposition of his personal physician, Dr. W. H. Elliott. As evidence that the court ignored Dr. Elliott's testimony, Mr. Conley points to the fact that there is no reference to that testimony in the single paragraph of the trial court's opinion stating that *de novo* review of the expanded record also supported its finding that the defendants justifiably denied additional long-term disability benefits to Mr. Conley. The lack of a reference to Dr. Elliott in that brief paragraph, however, does not necessarily mean that the trial court failed to consider the deposition. Dr. Elliott's deposition was admitted into evidence, and we see no reason to believe that the trial court failed to take it into account.

The absence of Dr. Elliott's name from the trial court's discussion of *de novo* review is also the basis for Mr. Conley's argument that the court failed to apply the principle that a treating physician's opinion is entitled to greater deference than the opinion of a reviewing physician. *See*, *e.g.*, *Donaho*, 74 F.3d at 901. Again, we cannot say that the trial court failed to give proper weight to Dr. Elliott's opinion. The court refers to Dr. Elliott's letters and reports (although not to his deposition) throughout its opinion, and there is no doubt that it weighed this evidence against that of the other four physicians who saw Mr. Conley (including an orthopedic surgeon, Dr. John Kenney, whom Mr. Conley consulted independently). The rule is not that a treating physician's opinion trumps all other evidence but that a court must give it appropriate weight. We see no indication that the trial court in this case failed to do so.

V.

Mr. Conley next asserts that the trial court should have required the defendants to use the so-called *Polaski* factors to evaluate the validity of his subjective complaints of pain. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (*per curiam* order). It is only when subjective complaints are the basis for a disability claim under social security or the provisions of the Railroad Retirement Act, however, that *Polaski* is of relevance. *See*, *e.g.*, *Fountain v. Railroad Retirement Board*, 88 F.3d 528, 531, 531 n.3 (8th Cir. 1996). Mr. Conley's suggestion that *Donaho* extends the principles laid down in *Polaski* to ERISA cases is not persuasive; *Donaho*, 74 F.3d at 901, applies only the proposition, borrowed from social security cases, that a treating physician's opinion is entitled to special deference. We see no reason to import wholesale, into what is essentially a private-law area, special rules developed for reviewing the decisions of administrative agencies.

Mr. Conley similarly suggests that once he established that he was unable to perform his own job, the defendants had the burden of showing that jobs were available in the national economy that he was capable of performing. Since he

suffered from a nonexertional impairment, namely, pain, Mr. Conley argues that the defendants could meet this burden only by using vocational expert testimony or other similar evidence. *See Neely v. Shalala*, 997 F.2d 437, 441 (8th Cir. 1993), and *Sanders v. Sullivan*, 983 F.2d 822, 823 (8th Cir. 1992). This procedure, however, is the special creature of social security, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2), and has no relevance to Mr. Conley's case.

Mr. Conley submits in addition that the trial court erred when it stated that the award of social security benefits to him was not entitled to any particular weight in the overall consideration of his claim. Mr. Conley cites *Cox v. Mid-America Dairymen, Inc.*, 965 F.2d 569, 572 (8th Cir. 1992), for the proposition that when a plan provides that a claimant must be eligible for social security benefits in order to qualify for plan benefits, then the plan must award benefits to any claimant who is receiving social security benefits unless the plan's definition of "disability" is more restrictive than that required for social security benefits, *see* 42 U.S.C. 416(i)(1)(A). We believe that this reading of *Cox* is too broad. It is in any case irrelevant to Mr. Conley's situation because the defendants' plan makes no reference to a claimant's eligibility for social security benefits.

Mr. Conley also draws our attention to *Ladd v. ITT Corp.*, 148 F.3d 753, 755-56 (7th Cir. 1998), which holds that when an administrative law judge's assessment is in accord with the unanimous findings of the doctors who examined a plaintiff, then the defendant must give some reason for disagreeing with that assessment. The *Ladd* court further held that when an employer supports a plaintiff's effort to demonstrate total disability to the Social Security Administration, to the extent of providing the plaintiff with legal representation, the employer is estopped from later denying that the plaintiff was totally disabled under an employee welfare plan, especially when the plaintiff's condition has deteriorated in the meantime. *Id.* Even if we were disposed to follow *Ladd*, neither of its conditions is met here: The doctors who examined Mr. Conley were not unanimous, and the defendants did not help him make his case to the Social Security Administration.

## VI.

We turn, finally, to the question of whether Mr. Conley was discharged either for exercising any right under the employee welfare plan or for the purpose of interfering with his right to obtain benefits to which he was entitled, both of which are unlawful.  *See* 29 U.S.C. § 1140. The trial court found that Mr. Conley was terminated because, more than a year after he had justifiably been denied additional long-term disability benefits, he still had not returned to work or made other acceptable arrangements.  This was a lawful reason for discharge, the trial court correctly held, adding that Mr. Conley never persuaded the court that his termination was in fact motivated by other considerations.

On appeal, Mr. Conley points to the fact that the company records gave "health" as the reason for his termination.  This indicates, he says, that his poor health and eligibility for additional long-term disability payments were the real motives for his termination.  It is not clear to us from the record whether Mr. Conley made this argument to the trial court. Even if he did, however, we find that, in the circumstances of this case, it was not improper for the trial court to give greater weight to the evidence of a lawful reason for Mr. Conley's discharge.

## VII.

For the reasons stated, we affirm the judgment of the trial court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-