**IT IS HEREBY FURTHER ORDERED** that plaintiff's motion for summary judgment is **denied.**

**IT IS HEREBY FURTHER ORDERED** that plaintiff's motion to reopen the record is **denied.**

Lavella WALTERS, Plaintiff,

v.

Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.

No. 2:96CV00083 LOD.

United States District Court,
E.D. Missouri,
Northern Division.

Jan. 21, 1998.

---

1. President Clinton appointed Kenneth J. Apfel to serve as Commissioner of Social Security, effective September 29, 1997, to succeed John J. Callahan. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth J. Apfel should be substituted for John J. Callahan as the defendant in this suit. No further action need be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Karen Kraus Bill, Law Office of Karen Kraus Bill, Columbia, MO, for plaintiff.

Madeleine B. Cole, Office of U.S. Attorney, St. Louis, MO, for defendant.

## ORDER AND MEMORANDUM OF UNITED STATES MAGISTRATE JUDGE

DAVIS, United States Magistrate Judge.

This matter is before the Court on the cross-motions of the parties for summary judgment pursuant to Rule 56, Fed.R.Civ.P. This case is before the undersigned Magistrate Judge by consent of the parties pursuant to 28 U.S.C. 636(c).

Plaintiff filed an application under the Social Security Act (the Act) for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, *et seq.* (Tr. 65–67) Plaintiff alleged disability due to mitral prolapse, hypoglycemia, herniated disc, inflammation of the joints, and chronic cystitis. (Tr. 111) In her December 2, 1993 reconsideration disability report plaintiff also alleged anxiety attacks and an abnormal menstrual cycle. (Tr. 127) Plaintiff alleged that she was unable to work beginning May 13, 1991. (Tr. 111)

Plaintiff's applications were denied initially (Tr. 68–70, 79–80) and on reconsideration. (Tr. 88–89, 98–99) On June 20, 1995, a hearing was held before an Administrative Law Judge (ALJ). (Tr. 33–64) On July 27, 1995, the ALJ issued a decision finding that plaintiff was not under a "disability" as defined in the Act. (Tr. 9–20) On September 24, 1996, after considering new evidence, the Appeals Council of the Social Security Administration denied plaintiff's request for review. (Tr. 4–5) Thus, the decision of the ALJ is the Commissioner's final decision and is reviewable in this proceeding. 42 U.S.C. § 405(g).

### MEDICAL EVIDENCE

The medical evidence shows that on July 9, 1990,[2] plaintiff was seen at the Columbia orthopedic Group after having pain in her left buttock a month earlier. (Tr. 147) Plaintiff saw an osteopath twice, and when she

---

**2.** Plaintiff has included medical records as for back as 1976. Plaintiff, however, alleged disability as of May 13, 1991. Thus, the Court will only discuss the medical evidence prior to that date that is relevant to her present alleged impairments.

went on vacation the pain went away. (Tr. 147) The pain returned a little bit on July 9 while she was at work. (Tr. 147) Plaintiff worked as a salesclerk, which required her to be on her feet all day. (Tr. 147)

Other than this pain, plaintiff was otherwise very healthy. (Tr. 147) She was taking Corgard for mitral valve prolapse and has trouble with hypoglycemia. (Tr. 147) Plaintiff was tender over her left ischial tuberosity, had full range of motion, and straight leg raising was negative. (Tr. 147) X rays were negative, and plaintiff was diagnosed as suffering from a strained hamstring that was improving. (Tr. 147) She was put on an Advil regimen and told to use a heating pad. (Tr. 147)

On February 21, 1991, plaintiff was seen by Dr. Winston Harrison who reported that she was "getting along real well on her Cipro regimen" and that "life was much better since she discovered that drug." (Tr. 191) Plaintiff reported a little aching across her lower back and a little chilling. (Tr. 191) Plaintiff was diagnosed as suffering from female urethral syndrome, chronic urethotrigonitis with previous history of hemorrhagic cystitis, membrane instability and multiple allergies. (Tr. 191) She was told to take Cipro for flare-ups and to eat a low tyramine and low acid diet. (Tr. 191)

On May 9, 1991, plaintiff was seen by Dr. J.W. Hobbs for mid-thoracic strain (back pain). (Tr. 153) On October 8, 1992, Dr. Harrison saw plaintiff for a follow-up on her recurrent urinary tract infections. (Tr. 194) Plaintiff was told to take Cipro for flare-ups and to return in one year. (Tr. 194, 198)

On July 5, 1993, Dr. Larry Noel treated plaintiff for pain in the bladder and burning urination. (Tr. 157, 208) She was diagnosed as having cystitis and put on antibiotics. (Tr. 208) On September 29, 1993, Dr. H.T. Lin summarized his treatment of plaintiff from 1988–89. (Tr. 159) An echocardiogram revealed a prolapsed mitral valve, and plaintiff was prescribed Corgard for chest pain. (Tr. 159) On her last visit plaintiff had no significant chest pain, palpitations, and no heart murmur, although a mid-systolic click remained. (Tr. 159) There was no sign of congestive heart failure, and Dr. Lin conclud-

ed that, based on his records, plaintiff was not disabled. (Tr. 159)

A letter dated October 4, 1993, written by an optometrist, Dr. Norris Preston, stated that plaintiff needs glasses only for reading, her distance vision without correction is 20/20, and she has worn one contact lens since 1987. (Tr. 168) Dr. Preston further stated that plaintiff has no disability in her vision. (Tr. 168) In a follow-up letter in December of 1993, Dr. Preston confirmed his earlier findings. (Tr. 169)

A consultative examination was performed by Dr. Michael Critchlow, and he stated in a medical report dated October 29, 1993 that plaintiff's chief complaint was hypoglycemia. (Tr. 160–63) Plaintiff also was diagnosed several years ago as suffering from mitral valve prolapse. (Tr. 160) Plaintiff also had a herniated cervical disc that results in some dull pain on the right side of the neck daily. (Tr. 160) The pain radiates down into her hand with reaching and stretching of her hand. (Tr. 160)

Plaintiff also complained of pain and swelling in her arms, elbows, and especially her knees for the past two years. (Tr. 160) She was unable to stand for several months because her legs would not support her. (Tr. 160) Plaintiff was taking Cipro for cystitis and she has frequent bladder infections. (Tr. 160–61) Plaintiff also reported decreased vision for years. (Tr. 161) A cardiovascular review showed no peripheral edema, her heart was normal to palpation, and a very faint mid-systolic click. (Tr. 161) Dr. Critchlow diagnosed plaintiff as suffering from mitral valve prolapse, hypoglycemia, degenerative joint disease was suggested, chronic neck pain, chronic interstitial cystitis, and bilateral impaired vision. (Tr. 163)

On December 22, 1993, plaintiff complained to Dr. Noel of having a lot of anxiety, especially at night. (Tr. 207) Plaintiff was prescribed some medication for her anxiety. (Tr. 207) In June and July of 1994 plaintiff complained of left hip pain. (Tr. 207, 209) On January 20, 1994, plaintiff was seen by Dr. Harrison for a follow-up of her recurrent urinary tract infections. (Tr. 205) Plaintiff was diagnosed as having chronic urethrotri-

gonitis, female urethral syndrome, and back pain. (Tr. 241) She was told to return in one year. (Tr. 241)

On May 9, 1994, plaintiff reported leg swelling and hot flashes to Dr. Noel. (Tr. 224–25) On August 15, 1994, plaintiff was seen by Dr. Ross Duff complaining of hot flashes and menopausal symptoms. (Tr. 218) Plaintiff was put on a medication, and a follow-up visit three months later to Dr. Duff showed she was doing well. (Tr. 218)

On August 16, 1994, plaintiff was sent to physical therapy for her left hip and trochanter pain. (Tr. 239–241, 242) On August 30, 1994, Dr. Thomas Turnbaugh saw plaintiff, and she reported that her hip pain was better and she had stopped smoking. (Tr. 231, 233) An X ray of her left hip was normal. (Tr. 236)

On February 8, 1995 plaintiff saw Dr. Noel, complaining of back pain. (Tr. 211) On April 28, 1995, plaintiff again saw Dr. Noel, complaining that her low back pain was radiating down her legs. (Tr. 212) On May 5, 1995, plaintiff complained that her right leg was hurting. (Tr. 212)

On May 9, 1994, plaintiff complained to Dr. Lin that her left leg hurt and swelled after she stood for a certain period. (Tr. 224–25) She also complained of intermittent hot flashes. (Tr. 225) On May 31, 1995, plaintiff saw Dr. Lin complaining of pain in her neck, shoulders, and lower back for the past one to two weeks. (Tr. 223) She also complained of fatigue and difficulty sleeping. (Tr. 223)

### HEARING TESTIMONY

Plaintiff stated that she was 49 years old and had completed nine years of education. (Tr. 35) She has been unable to work since May 13, 1991 because of her back and legs, mitral prolapse, and hypoglycemia. (Tr. 35) She did a lot of bending, lifting, and waiting on people at work, and she sometimes got confused at work because of the pain. (Tr. 35, 36) She has pain in her neck and right shoulder and also in her lower back, which causes her legs to lock up. (Tr. 36)

The pain in her neck and shoulder comes and goes every day and makes it difficult to lift and raise her hands. (Tr. 37) Her problem with her lower back causes her legs to go out from under her. (Tr. 38) She cannot walk sideways without falling. (Tr. 38) Her feet go numb, and she recently had to get a shot in her spine because she could hardly use her right leg. (Tr. 38) The medicine she takes for her pain causes nausea every day, which results in her vomiting. (Tr. 40)

Plaintiff also stated that she has been treated for some time for cystitis. (Tr. 41) This causes her to lose her urine, burn, and to use the bathroom a lot. (Tr. 41) She has a flare-up about every three months. (Tr. 41) Even when she is not having a flare-up she has to go to the bathroom a lot and her lower stomach hurts. (Tr. 42)

Plaintiff also has trouble with her blood sugar levels, and she has to eat food every two and a half hours. (Tr. 43) Sometimes this condition causes her to get "spacey" and shake. (Tr. 43) Plaintiff also complained of chest pain daily and that she has to sit or lie down and rest for 30 to 40 minutes. (Tr. 43)

During the day plaintiff sometimes dusts, fixes breakfast, sleeps a lot, and does stretches. (Tr. 44) She watches television with her husband sometimes, reads the papers, goes out to eat, and drives a car. (Tr. 45) She visits and plays cards with family friends. (Tr. 47) She does some laundry. (Tr. 47)

When plaintiff has a hypoglycemia reaction, she gets palpitations and shakes. (Tr. 46) Bending is difficult for her, she can sit for only twenty to twenty-five minutes, and she can only stand for five minutes. (Tr. 48) Plaintiff cannot walk a city block without having discomfort. (Tr. 48) She can lift two to three pounds. (Tr. 49) Plaintiff sometimes smokes. (Tr. 49)

Plaintiff has had trouble getting along with people for the past 10 years. (Tr. 51) She has not been treated for any emotional or mental condition in the past four years. (Tr. 51) Plaintiff took a prescription for anxiety in the past as needed, about once a week. (Tr. 52) Plaintiff is able to follow directions. (Tr. 53–54) She has trouble concentrating and does not want to be around people. (Tr. 54)

Plaintiff gets up, fixes breakfast, does her stretches, and then lies down for an hour.

(Tr. 55) She also lies down for around an hour after lunch because she hurts a lot. (Tr. 56) She has difficulty writing and pouring a pitcher of tea due to her pain. (Tr. 57)

A vocational expert also testified at the hearing. (Tr. 59–64) The expert was asked to assume a woman 44–49 years of age with nine years of education; has pain in her neck, upper and lower back, and right shoulder; has a mitral valve prolapse with occasional chest pain and shortness of breath on any significant exertion; has some occasional urinary incontinence; has occasional pain in her lower extremities if she overexerts herself; has a very mild anxiety-related disorder; can alternate sitting for up to 30–45 minutes at a time with standing 10–15 minutes at a time with some movement; can walk a block; can lift a ten-pound object occasionally, lesser objects more frequently; can follow instructions; and can relate reasonably well to people. (Tr. 61) He was then asked whether such a person could return to her past relevant work or other work. (Tr. 61) The expert stated that such an individual could return to her past position as a home companion. (Tr. 52)

## ALJ FINDINGS

The ALJ found that plaintiff met the disability insured status requirements of the Act on May 31, 1991 and has not engaged in substantial gainful activity since that time. (Tr. 19) The ALJ determined that the medical evidence establishes that plaintiff has orthopedic problems involving the neck, right shoulder, back and leg, mitral valve prolapse, hypoglycemia, and urinary incontinence, but that she does not have an impairment or combination of impairments listed in, or equal to one listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 19)

The ALJ also found that plaintiff's complaints as to the severity of her impairments and her need to lie down to be no more than partially credible. (Tr. 19) Furthermore, the ALJ determined that plaintiff can perform her past relevant work as a home companion. (Tr. 19) The ALJ concluded that plaintiff was not under a disability as defined by the Act at any time through the date of the decision. (Tr. 19)

## DISCUSSION

Plaintiff claims that the Commissioner improperly determined that plaintiff could perform her past relevant work. Plaintiff also claims that the Commissioner failed to consider relevant evidence from Dr. Lin which favored her claim. Plaintiff further claims that the Commissioner failed to evaluate plaintiff's subjective complaints properly. Finally, plaintiff argues that the Commissioner failed to make sufficient findings with regard to her mental impairment.

Based on a review of the entire record as a whole, this Court finds no error in the ALJ's determination that plaintiff is not disabled. Therefore, the ALJ's decision is affirmed.

The Commissioner's decision as to a claimant's disability status is conclusive upon this Court if it is supported by "substantial evidence," i.e., relevant evidence which a reasonable person might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). To determine whether the Commissioner's final decision is supported by substantial evidence, the Court is required to review and consider the record as a whole. *Stewart v. Secretary of H.H.S.*, 957 F.2d 581, 585 (8th Cir.1992).

Plaintiff first claims that the Commissioner improperly determined that she could perform her past relevant work as a home companion. Plaintiff argues that the Commissioner's decision does not discuss the exertional and nonexertional requirements of that job and does not indicate his basis for determining the physical and mental demands of her past work.

Although not discussed by either party, the Court initially notes an atypical feature in this case. A five-step analysis exists for evaluating a claimant's application for disability benefits. 20 C.F.R. § 404.1520(a)–(f). Those steps require the claimant to show that she: (1) is not engaged in substantial gainful activity; (2) has a medically severe impairment which precludes her from engaging in substantial gainful activity; or (3) has an impairment which meets the listing in the regulations; (4) is unable to return to her

past relevant work; and (5) is unable to engage in other positions which exist in significant numbers throughout the national economy.

Normally, the ALJ makes an initial determination at step 4 concerning a claimant's ability to perform her past relevant work without the aid of vocational expert testimony. Such testimony is then typically used at step 5 only after the ALJ determines that a claimant cannot perform her past relevant work. One court has held that an ALJ is prohibited from making a decision on a claimant's ability to do her past relevant work based on the testimony of a vocational expert. *Smith v. Bowen*, 837 F.2d 635, 637 (4th Cir.1987); *contra, Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir.1996) (declining to follow the *per curiam* decision in *Smith*).

The Social Security Administration believes that it is not precluded from using vocational expert testimony at step four. *See Social Security Acquiescence Ruling*, 1990 WL 300818 (1990); *See also Social Security Ruling* 82–61. The Court has not found any Eighth Circuit opinion directly on point, although in *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir.1994), the court implicitly approved of such a procedure. Additionally, in *Battles v. Sullivan*, 902 F.2d 657, 659 (8th Cir.1990), the court held that if, although not developed in detail, the record of a claimant's past relevant work contains enough information on her past work for the ALJ to make a determination on the claimant's ability to return to such work, the ALJ's decision concerning a claimant's ability to perform her past relevant work will be affirmed.

■ This Court finds that the ALJ could properly use the testimony of a vocational expert at step 4 to determine plaintiff's ability to perform her past relevant work. Therefore, if there is substantial evidence in the record as a whole to support the ALJ's findings concerning plaintiff's ability to perform her past relevant work, including the testimony of the vocational expert, his decision will be upheld. *Battles, supra.*

■ At plaintiff's hearing, the vocational expert testified that the skill and exertional level of her job as a home companion was sedentary and unskilled. (Tr. 60) The ALJ then put forth a hypothetical to the vocational expert which explicitly set out the physical and mental capabilities and limitations of plaintiff and the effect those limitations had on plaintiff's ability to function. (Tr. 59–64) In his decision, the ALJ noted the vocational expert's testimony that plaintiff's past relevant work included her working as a home companion, which the expert identified as sedentary unskilled work. (Tr. 18) The ALJ then noted that the expert testified that plaintiff could still perform this work. (Tr. 18) The ALJ found that this testimony was both reasonable and uncontroverted, and he concluded that plaintiff could perform her past relevant work as a home companion. (Tr. 19)

Thus, the ALJ properly relied on the expert's opinion as to the skill and exertional demands required of plaintiff's past relevant work as a home companion. The ALJ also properly reflected plaintiff's physical and mental limitations in the hypothetical he gave to the vocational expert. There is substantial evidence in the record as a whole to support the ALJ's findings with regard to the limitations he put forth in his hypothetical.

The ALJ then concluded that plaintiff could perform her past relevant work. Thus, since there was sufficient evidence in the record concerning plaintiff's past relevant work, including the testimony of the vocational expert, for the ALJ to determine plaintiff's ability to return to such work, his decision will be upheld. *Battles, supra.*

Plaintiff relies heavily on *Groeper v. Sullivan*, 932 F.2d 1234 (8th Cir.1991) to support her argument that the ALJ failed to make explicit findings regarding the physical and mental demands of plaintiff's past relevant work. In *Groeper*, however, there was no vocational expert testimony concerning the skill and exertional requirements of the claimant's past relevant work and whether the claimant could perform his past relevant work. In this case, there was such testimony.

Plaintiff also argues that the vocational expert's opinion that plaintiff's past work as a home companion was sedentary work is

inconsistent with the Dictionary of occupational Titles (DOT), which identifies such work as light or medium exertional work. Plaintiff further argues that when there is such a conflict, the DOT controls.

The DOT listings for occupations lists the appropriate *maximum* for each position, not their range. *Jones v. Chater,* 72 F.3d 81, 82 (8th Cir.1995) (emphasis added) Thus, if the DOT characterizes a job as medium or light, there is no conflict if a vocational expert testifies that a claimant can perform such a job at the sedentary level, as long as the expert specifically limits his opinion to jobs that claimant can perform in light of his impairments. *Id.*

In the case at bar, the vocational expert found that plaintiff, based on her impairments, could perform the job of home companion at the sedentary level. Such an opinion could be relied on by the ALJ. *Jones, supra.* Furthermore, such an opinion is within the range of light or medium contained in the DOT for a home companion.

Plaintiff also claims that the Commissioner failed to make express findings as to plaintiff's RFC and did not indicate whether she was limited to sedentary, light, or medium work. The ALJ, however, included his findings concerning the RFC of plaintiff in his hypothetical to the vocational expert. These included findings that plaintiff has occasional pain in her lower extremities if she overexerts herself, can alternate sitting for up to 30–45 minutes at a time with standing 10–15 minutes at a time with some movement, can walk a block, and can lift a 10–pound object occasionally, lesser objects more frequently. The expert then stated that plaintiff could perform the job of home companion at the sedentary level.

While it may have been beneficial for the ALJ to go into more detail in his decision concerning plaintiff's RFC, this arguable writing deficiency does not require setting aside the ALJ's opinion, *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir.1992), as the substance of such findings is explicitly contained in the hypothetical to the vocational expert. Finally, a review of the ALJ's opinion shows that he made the final determination based on his review of the entire record as a whole, including the vocational expert's response to the hypothetical, which contained the RFC of plaintiff as properly determined by the ALJ.

Plaintiff next claims that the Commissioner failed to consider relevant evidence from Dr. Lin which favored her claim. Specifically, plaintiff notes the failure of the ALJ to discuss the notes of Dr. Lin, except for his September 1993 note.

Dr. Lin saw plaintiff in May of 1994 concerning her complaints of leg pain. (Tr. 224–25) The ALJ did not discuss these treatment notes in his decision. The ALJ, however, credited plaintiff's claims of orthopedic problems with her legs. (Tr. 19). Furthermore, Dr. Lin did not apparently make a finding in May of 1994 that plaintiff was disabled, and these notes appear to be cumulative to other evidence in the record. Thus, there is no indication of any prejudice to plaintiff by the ALJ's omission. In the absence of such, reversal or remand is unwarranted. *Phelan v. Bowen,* 846 F.2d 478, 481 (8th Cir.1988).[3]

Plaintiff next claims that the Commissioner failed to evaluate plaintiff's subjective complaints properly. Plaintiff claims that the Commissioner failed to consider the extent to which the objective medical evidence supports her complaints of episodic leg problems and limited walking and standing, and overlooked the treatment notes of Dr. Lin.

Plaintiff also argues that the Commissioner improperly discounted plaintiff's back pain because of her failure to have surgery. Additionally, plaintiff claims that the Commissioner improperly found no basis for her need to lie down during the day to relieve her symptoms. Plaintiff argues that the Commissioner should not be able to rely on the fact that no physician was of the opinion that she was disabled. Lastly, plaintiff claims that the Commissioner improperly re-

---

**3.** In a footnote, plaintiff notes the illegibility of some of these records and notes that illegibility of records can be a basis for remand. The records though are generally decipherable, and the Court finds the ALJ developed a reasonably complete record as required. *See Clark v. Shalala,* 28 F.3d 828, 830–31 (8th Cir.1994).

lied on plaintiff's daily activities to discredit her subjective complaints.

The ALJ applied *Polaski v. Heckler*, 751 F.2d 943 (8th Cir.1984) (subsequent history omitted), in analyzing plaintiff's subjective complaints of pain. The ALJ evaluated the medical evidence and plaintiff's subjective complaints, first pointing out that plaintiff testified that she does not get along well with people, cannot write, and that she has problems with concentration and confusion. (Tr. 14)

However, the ALJ then noted that plaintiff also testified that she can follow directions and complete tasks; that she had, by writing, completed various medical forms in connection with her application; that she was able to sit and stand during the hearing without any problem; and that her concentration, memory, and attention span were fairly good. (Tr. 14) She was appropriately responsive to questioning, and there were no signs of distress, except for some crying. (Tr. 14)

The ALJ recapped the medical evidence and then noted plaintiff's poor work record where she was not in the work force in many past years for reasons unrelated to medical problems, which suggested a questionable motivation to work. (Tr. 17) Furthermore, her disability insurance benefits far exceed many of her prior years' earnings, suggesting that there may not be any financial motivation to work as well. (Tr. 17)

The ALJ next stated that plaintiff watches television, reads the newspaper, eats out, is visited by her family and they play cards, and once in a while she goes to her sister-in-law's home to play cards. (Tr. 17) The ALJ found that such activities do not support a finding that she is precluded from all types of work activity. (Tr. 17)

The ALJ also stated that the medical records do not support her claim that she reported that she suffers adverse side-effects from her medications. (Tr. 17) To the contrary, the ALJ cited to plaintiff reporting to Dr. Harrison that she was getting along well taking Cipro and that her life was better since discovering the drug. (Tr. 17) The ALJ also states that although plaintiff complains of back pain, she has never undergone surgery or had surgery or a back brace recommended. (Tr. 17)

The ALJ also noted that plaintiff continues to smoke, despite being told by her doctors to quit. (Tr. 17) Furthermore, the effectiveness of prescribed medication and plaintiff's failure to use other measures to relieve her symptoms weigh against her claim of severe debilitating symptoms. (Tr. 17) Additionally, no physician of record has provided an opinion that plaintiff is disabled from any impairment or combination thereof. (Tr. 17) To the contrary, the ALJ cited Dr. Lin's September 1993 conclusion that plaintiff was not disabled. (Tr. 17)

Similarly, Dr. Harrison reported plaintiff had improved since being on Cipro. (Tr. 18) Dr. Critchlow found that her lungs were clear, there was no peripheral edema, and her heart was normal to palpation. (Tr. 18) Plaintiff's strength was not noticeably reduced and she could walk on her heals and toes. (Tr. 18)

With regard to her claim of anxiety, the ALJ noted that plaintiff reported having anxiety on and off, especially at night. (Tr. 18) The ALJ stated that plaintiff was on medication for her anxiety that she took at bedtime, but not every night. (Tr. 18)

The ALJ then concluded that based on all of the above inconsistencies between plaintiff's testimony and the record, the ALJ found that plaintiff was only partially credible with regard to the severity of her condition. (Tr. 19) Furthermore, the ALJ found no medical basis for plaintiff's claim to need to lie down during the day periodically to relieve her symptoms. (Tr. 19)

 In disability determinations, credibility assessments are in the first instance for the ALJ and not the courts. *Tucker v. Heckler*, 776 F.2d 793, 796 (8th Cir.1985). The ALJ may reject a claimant's subjective testimony of pain on the basis of credibility due to inconsistencies in the record as a whole. *Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir.1990). The ALJ, however, must make express credibility determinations and set forth any inconsistencies in the record that lead him to reject plaintiff's complaints, and those credibility determinations must be

supported by substantial evidence. *Jernigan v. Sullivan*, 948 F.2d 1070, 1073 (8th Cir. 1991).

██ In assessing a claimant's subjective allegations, the ALJ must consider:

1. the subjective evidence of the duration, frequency, and intensity of plaintiff's pain;

2. any precipitating or aggravating factors;

3. the claimant's daily activities;

4. the dosage, effectiveness and side effects of any medication; and

5. the claimant's functional restrictions.

*Baker v. Secretary of H.H.S.*, 955 F.2d 552, 555 (8th Cir.1992).

██ In the case at bar, the ALJ examined the subjective evidence of plaintiff's pain; any precipitating or aggravating factors; her daily activities; the dosage, effectiveness, and side effects of medication; and her functional restrictions. The ALJ then relied on several inconsistencies in plaintiff's testimony concerning her subjective complaints and the medical evidence to discredit plaintiff's subjective complaints. These included her ability to write and concentrate; her activities including work around the house and visits with relatives; and the lack of any medical evidence of disability.

Plaintiff's claim that the Commissioner failed to consider the extent to which the objective medical evidence supports her complaints of leg problems is not supported by the record.[4] In fact, the ALJ not only considered the medical evidence, he partially credited plaintiff's complaints with regard to her complaints. In the end, plaintiff simply disagrees with the ALJ's conclusion that she is not disabled. However, there is clearly substantial evidence in the record to support the ALJ's determination. Thus, since the concept of substantial evidence allows for the possibility of drawing two inconsistent conclusions, the ALJ's choice between the two is not a basis for reversal. *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir.1988).

██ Plaintiff also argues that the Commissioner improperly discounted plaintiff's back pain because of her failure to have surgery. The ALJ actually noted that plaintiff never underwent surgery or had surgery or a back brace recommended. These statements are undisputedly true, and a claimant's pain of disabling pain may be discredited when the record reflects minimal or conservative medical treatment. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir.1994).

The Court also notes that this was just one of many factors relied on by the ALJ in discounting the severity of plaintiff's subjective complaints. The other factors cited to by the ALJ, such as the medical evidence, plaintiff's daily activities, and the hearing testimony, are supported by the record and are inconsistent with her complaints as to the severity of her disabling pain. Furthermore, the ALJ partially credited plaintiff's complaints of back pain in his decision.

Plaintiff claims that the Commissioner improperly found in his decision that there was no basis for her need to lie down during the day to relieve her symptoms. Plaintiff cites to a report of Dr. Noel in the record.

That report, however, was not submitted to the ALJ prior to his decision. Rather, it was subsequently submitted to the Appeals Council, who examined its contents and then it affirmed the ALJ's decision. (Tr. 4) When new evidence is submitted to the Appeals Council and it considers the evidence, this Court can then include the evidence into the record for determination. *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir.1994) (noting that this standard requires courts to speculate on how the ALJ would have weighed the new evidence, "a peculiar task for a reviewing court").

Dr. Noel's report states that plaintiff has mid- and low-back problems that cause her pain. (Tr. 228) He has treated her off and on with Cortisone injections and anti-inflammatories. (Tr. 228) Plaintiff remains about the same and is never completely rid of her pain. (Tr. 228) Plaintiff told Dr. Noel in the past that lying down for an hour in the morning

---

4. Plaintiff also complains that the Commissioner overlooked some of the treatment notes of Dr. Lin. As discussed at pg. 1084, *infra*, that omission does not warrant reversal or remand.

and afternoon gives her relief, and he has encouraged her to do this. (Tr. 228)

▪ Thus, Dr. Noel's report does no more than state that plaintiff has been encouraged to lie down twice a day to provide her some relief. Dr. Noel does not indicate that plaintiff needs do this. It appears that plaintiff's lying down is something she informed Dr. Noel that she does, rather than being prescribed treatment by Dr. Noel. Moreover, Dr. Noel's report does not contain or refer to any medically acceptable clinical or diagnostic data to support his statements. A physician's opinion that is not so supported may be discounted. *Ward v. Heckler,* 786 F.2d 844, 846 (8th Cir.1986).

▪ Plaintiff next argues that the Commissioner should not be able to rely on the fact that no physician was of the opinion that she was disabled. The Court finds nothing improper in the ALJ relying on the fact that none of her doctors stated that plaintiff was disabled. *Cruse v. Bowen,* 867 F.2d 1183, 1186 (8th Cir.1989) Furthermore, this was just one of a litany of factors relied on by the ALJ in making his decision.

▪ Plaintiff also claims that the Commissioner improperly relied on plaintiff's daily activities to discredit her subjective complaints. The ALJ stated that plaintiff watches television, reads the newspaper, eats out, visits with family, and plays cards. The ALJ found that such activities do not support a finding that she is precluded from all types of work activity. While a plaintiff's daily activities are not dispositive on the issue of disability, they are a relevant factor that must be considered. *Wilson v. Chater,* 76 F.3d 238, 241 (8th Cir.1996).

Finally, plaintiff argues that the Commissioner failed to make sufficient findings with regard to her mental impairment. Plaintiff argues that the Commissioner merely stated that his evaluation of plaintiff's mental impairment is contained in the Psychiatric Review Technique Form (PRTF) but provides no basis as to how he reached the required findings in the form.

As detailed above, the ALJ noted in his decision that plaintiff testified that she suffers from anxiety on and off, especially at night. (Tr. 18) The ALJ also stated that plaintiff was on medication for her anxiety that she took at bedtime, but not every night. (Tr. 18) The ALJ then incorporated by reference the PRTF he completed and attached it to his decision. (Tr. 18)

In the PRTF, the ALJ evaluated plaintiff's mental impairment under 20 C.F.R. Pt. 404, Subpt. P., App. 1 Pt. A, § 12.06, which covers anxiety related disorders. (Tr. 21) The ALJ found that there was absent any of the required medically documented findings listed in § 12.06 that are especially relevant to an individual's ability to work. (Tr. 21) The ALJ then found that plaintiff has slight restrictions of daily living activities; slight difficulties in maintaining social functioning; seldom has deficiencies of pace, concentration, and persistence resulting in her failure to complete tasks in a timely manner in work settings and elsewhere; and she never has episodes of deterioration or decompensation in work or work-like settings. (Tr. 22)

The steps for analyzing a mental impairment under the Act are contained in § 404.1520(a). The PRTF outlines the steps of this procedure, and it must be completed and attached to the ALJ's opinion. § 404.1520(d); *Pratt v. Sullivan,* 956 F.2d 830, 834 (8th Cir.1992). There is no express requirement in the regulations requiring an ALJ to do more in his decision with regard to a mental impairment than to complete the PRTF.

The first step under § 404.1520a is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists. *Id.* These are gleaned from a mental status examination or psychiatric history, and they must be established by medical evidence consisting of signs, symptoms and laboratory findings. *Id.* at 835. If a mental impairment is found, the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent. *Id.*

The ALJ must then rate the degree of functional loss resulting from the impairment in four areas of function deemed essential to work: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or

pace; and (4) deterioration or decompensation in work or work-like settings. *Id.*

The first two categories are rated on a five-point scale: none, slight, moderate, marked, and extreme. The third category is rated: never, seldom, often, frequent, and constant. The fourth category is rated: never, once or twice, repeated, or continual. *Id.* at n. 10. Ratings of "none or slight" in the first and second areas, "never or seldom" in the third area, and "never" in the fourth area generally indicate that an impairment is not severe unless evidence indicates otherwise. *Id.*

 The mere existence of a mental condition is not per se disabling. *See Dunlap v. Harris,* 649 F.2d 637, 638 (8th Cir.1981). Where a claimant's mental or emotional problems do not result in a marked restriction of his daily activities, constriction of interests, deterioration of personal habits, or impaired ability to relate, they are not disabling. *See Gavin v. Heckler,* 811 F.2d 1195, 1198 (8th Cir.1987). *See also* 20 C.F.R. §§ 404.1520a and 416.920a.

The ALJ determined that plaintiff was suffering from an anxiety-related disorder. However, in the PRTF, the ALJ found that plaintiff did not satisfy the requirements under § 404.1520a. The ALJ also found absent those medical findings that are especially relevant to plaintiff's ability to work. The ALJ rated plaintiff's functional loss as "slight" in the first and second areas, "seldom" in the third area, and "never" in the fourth area, which generally indicates that an impairment is not severe. *Pratt, supra.*

Furthermore, there is no evidence in the record that plaintiff's mental problem results in a marked restriction of her daily activities, constriction of interests, deterioration of personal habits, or impaired ability to relate. Thus, it is not a disabling impairment. *Gavin, supra.* This is especially true in light of her testimony that she has not been treated for any mental or emotional condition for four years. While it may have been preferable for the ALJ to discuss plaintiff's anxiety in greater detail, this Court does not find that failure to require reversal, especially because of the minor nature of her impairment, which is not strongly contested by plaintiff.

**THEREFORE, IT IS HEREBY ORDERED** that defendant's motion for summary judgment is **granted.**

**IT IS FURTHER HEREBY ORDERED** that plaintiff's motion for summary judgment is **denied.**