No. 95-3595

Joe Pickney,                   *
                                *

      Appellant,         *
                                *   Appeal from the United States
   v.                    *   District Court for the Eastern
                                *   District of Arkansas.
Shirley S. Chater,         *
Commissioner, Social Security  *
Administration,            *
                                *
      Appellee.          *

Submitted:  April 11, 1996

Filed:  September 17, 1996

Before BEAM and MURPHY, Circuit Judges, and NANGLE,[*] District Judge.

BEAM, Circuit Judge.

Joe Pickney appeals the denial of Social Security benefits.  Because the Administrative Law Judge (ALJ) failed to include Pickney's mental impairments in the hypothetical question posed to the vocational expert, we reverse and remand.

## I.  BACKGROUND

Pickney is forty-eight years old.  He has a tenth grade education and was previously employed as a truck driver, a carpenter's helper and a machinery driver at a rock quarry.  He filed this application for Social Security benefits on March 11, 1991, alleging a disability onset date of August 10, 1988.  On that date, Pickney was involved in a truck accident and suffered

---

[*]The Honorable JOHN F. NANGLE, United States District Judge for the Eastern District of Missouri, sitting by designation.

multiple injuries, including a scalp laceration and underlying skull fracture of the frontal bone, a frontobasilar skull fracture, splenic rupture, meningitis due to a cerebrospinal fluid leak and a fibular fracture.  As a result, he suffers from vision and knee problems.  He is also sensitive to exposure to the sun and has memory problems.

After his application for benefits was denied initially and on reconsideration, Pickney appealed and a hearing was held before an ALJ. At the hearing, Pickney testified that he has very little peripheral vision, memory problems and pain in his knee.  Pickney's wife corroborated his testimony.  A vocational expert then testified that Pickney could not return to his former work.  In response to a hypothetical question posed by the ALJ,[1] the vocational expert stated that there are unskilled jobs in the national economy that a man with Pickney's experience and limitations (lack of peripheral vision and sun sensitivity) could perform.  At the close of the hearing, the ALJ kept the record open for submission of additional evidence.  Pickney submitted reports of examinations by a psychologist and an internist.

In his report, the psychologist, Dr. Russell Dixon, noted that Pickney has a full scale I.Q. on the Wechsler Adult Intelligence Scale-Revised (WAIS-R) of 78, a verbal I.Q. of 82 and a performance I.Q. of 76, which puts him in the range of "Borderline Intellectual

---

[1]The hypothetical question was:

> Let me ask you this--assuming that I find that he doesn't actually experience any mental limitations other than-- well, the hypothetical didn't include any so let me ask you to assume that I would find that he didn't experience any mental limitations and that the only restrictions he would have would be those related to his age and education.  What period of vocational adjustment, if any, would be necessary then?

Administrative Transcript at 65.

Functioning." Administrative Transcript at 275. Dr. Dixon also found "[n]europsychological test performance compatible with the residuals of a closed head injury--level of impairment--moderate--adaptive abilities are significantly compromised." Id. at 277. He further found "simple problem solving was mildly impaired," "two-step problem solving was severely impaired," "slowing of right hand motor speed," "abstract reasoning . . . in the impaired range," "spatial problem solving . . . in the impaired range," and "moderate generalized neuropsychological dysfunction in an individual with probable premorbid Borderline Intellectual Functioning." Id. at 275-77.

Dr. John Ashley, an internist, noted that Pickney's primary problem is "the loss of useable vision bilaterally, which is not due to injury to the eyeballs themselves, but is due to brain damage secondary to the fracture and possibly to the meningitis and small brain abscess, which developed following the injury." Id. at 280. He also noted that Pickney experiences "considerable difficulty in thinking and in acting as a result of his brain injury." Id. Dr. Ashley's diagnosis included "mild dementia, secondary to brain damage, with memory loss, confusion, difficulty with speech . . . [and] incoordination in anything involving balance." Id. at 281.

The ALJ considered these reports but found "[t]he claimant's borderline functioning has resulted in only a slight restriction of activities of daily living, slight difficulties in maintaining social functioning with often deficiencies of concentration and never any episodes of deterioration or decompensation in work or work-like settings."[2] Id.

_____

[2]The special procedures for mental impairment claims also require either the ALJ or a psychiatrist to complete a Psychiatric Review Technique Form (PRTF). Pratt v. Sullivan, 956 F.2d 830, 834 (8th Cir. 1992). Here, the ALJ completed the PRTF and found evidence of Organic Mental Disorder and Mental Retardation and Autism. On making these findings the ALJ was required to complete a functional limitation checklist, or "B" criteria of the listings, for each of those mental disorders. See generally Pratt, 956 F.2d at 834 n.7. His findings correspond with those "B" criteria. The ALJ essentially found that although Pickney has evidence of the disorders, his limitations were not of listing-level severity.

at 18.  He noted:

This is a different inquiry than whether the mental limitations should have been posed to the vocational expert.

> [w]hile the undersigned recognizes that the hypothec [sic]
> directed to the vocational expert did not specifically include
> limitations in detailed/complex work (which is based on the
> claimant's borderline IQ), the undersigned recognizes the
> vocational expert testified the jobs identified were unskilled,
> based on an assumption of a head injury. Thus, it appears
> these additional limitations were assumed by the vocational
> expert.

Id. at 19. Accordingly, the ALJ found that Pickney retains the residual functional capacity to perform jobs that exist in significant numbers in the national economy.

Pickney appealed to the district court and the district court affirmed, noting "substantial evidence in the record as a whole supports the ALJ's conclusion that plaintiff did not meet or equal listing 12.02 (organic mental disorder) or 12.05 (mental retardation or autism)." Pickney v. Chater, No. J-C-93-423, Memorandum and Order at 7 (E.D. Mo. Sept. 28, 1995). Additionally, the district court found that "the hypothetical question posed to the vocational expert properly included all impairments that were supported by substantial evidence, and excluded plaintiff's other alleged impairments." Id. at 9. On appeal, Pickney asserts error in the failure of the ALJ to pose a hypothetical to the vocational expert that included Pickney's mental impairments.

## II. DISCUSSION

We must affirm the decision of the ALJ if it is supported by substantial evidence in the record as a whole. Smith v. Shalala,

31 F.3d 715, 717 (8th Cir. 1994). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion. Oberst v. Shalala, 2 F.3d 249, 250 (8th Cir. 1993). The testimony of a vocational expert is required when a claimant has satisfied his initial burden of showing that he is incapable of performing his past relevant work. Johnston v. Shalala, 42 F.3d 448, 452 (8th Cir. 1994).

Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question. Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) When a hypothetical question does not encompass all relevant impairments, the vocational expert's testimony does not constitute substantial evidence. Hinchey v. Shalala, 29 F.3d 428, 432 (8th Cir. 1994). Thus, the ALJ's hypothetical question must include those impairments that the ALJ finds are substantially supported by the record as a whole. See Stout v. Shalala, 988 F.2d 853, 855 (8th Cir. 1993).

In this case, the ALJ acknowledged that Pickney has mental impairments and that finding is supported by objective evidence--the I.Q. scores. The ALJ did not merely fail to mention the mental impairment, he expressly directed the vocational expert to assume that Pickney had no mental impairments. We disagree that the vocational expert could either assume that Pickney had mental impairments because of his head injury or that his mental impairments were irrelevant for performance of unskilled jobs.

That Pickney's Borderline Intellectual Functioning was not of listing-level severity does not alter our conclusion. A claimant with a mental disorder of listing-level severity would be entitled to benefits on that basis alone. See Pratt v. Sullivan, 956 F.2d 830, 835 n.11 (8th Cir. 1992). That is not the issue here, however. It has long been the rule in this circuit that a hypothetical question posed to an ALJ must contain all of

claimant's impairments that are supported by the record.  See Ledoux v. Schweiker, 732 F.2d 1385, 1388 (8th Cir. 1984).  A hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies.  See, e.g., Roe v. Chater, 1996 WL 447738, *2 n.2 (8th Cir. Aug. 9, 1996) (the hypothetical stated:  "history of bipolar affective disorder, low average intelligence, developmental dyslexia, history of conversion reaction . . . able to do more than simple, routine, repetitive work, not relying on written instruction or on written matter, and not requiring constant, close supervision to detail" ).  Pickney's Borderline Intellectual Functioning is supported by the record and he was entitled to have the vocational expert consider this along with Pickney's other impairments.[3]

**III.  CONCLUSION**

For the reasons stated above, we reverse and instruct the district court to remand to the Commissioner for proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]It is of no consequence whether the Borderline Intellectual Functioning pre-dated the accident or not--the vocational expert still had to consider it in conjunction with Pickney's other impairments.  The fact that the reports were received in evidence after the hearing is similarly of no consequence since the ALJ could have posed a proper hypothetical to the vocational expert by way of interrogatory or could have reconvened the hearing.