**Dorothy J. SMITH, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

No. 4–98–CV–90328

United States District Court,
S.D. Iowa,
Central Division.

May 26, 1999.

Marti D. Nerenstone, Legal Services Corp. of Iowa, Council Bluffs, IA, for plaintiff.

William C. Purdy, Assistant United States Attorney, Des Moines, IA, for defendant.

## ORDER

PRATT, District Judge.

Plaintiff, Dorothy J. Smith, filed a Complaint in this Court on June 10, 1998, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed.

## BACKGROUND

Plaintiff filed an application for benefits on June 9, 1995. Tr. at 135–29. After the application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge. A hearing was held before Administrative Law Judge John P. Johnson (ALJ) on January 9, 1997 Tr. at 46–101. The ALJ issued a Notice of Decision—Unfavorable on May 28, 1997. Tr. at 12–37. The ALJ's decision was affirmed by the Appeals Council of the Social Security Administration on April 13, 1998. Tr. At 5–7. Plaintiff filed her Complaint in this Court on June 10, 1998.

The scope of this Court's review is whether the decision of the Secretary in denying disability benefits is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). *See Lorenzen v. Chater,* 71 F.3d 316, 318 (8th Cir.1995). Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support the conclusion. *Pickney v. Chater,* 96 F.3d 294, 296 (8th Cir.1996). We must consider both evidence that supports the Secretary's decision and that which detracts from it, but the denial of benefits shall not be overturned merely because substantial evidence exists in the record to support a contrary decision. *Johnson v. Chater,* 87 F.3d 1015, 1017 (8th Cir.1996) (citations omitted). When evaluating contradictory evidence, if two inconsistent positions are possible and one represents the Secretary's findings, this Court must affirm. *Orrick v. Sullivan,* 966 F.2d 368, 371 (8th Cir.1992) (citation omitted). *Fenton v. Apfel,* 149 F.3d 907, 910–11 (8th Cir.1998).

In short, a reviewing court should neither consider a claim de novo, nor abdicate its function to carefully analyze the entire record. *Wilcutts v. Apfel,* 143 F.3d 1134, 1136–37 (8th Cir.1998) citing *Brinker v. Weinberger,* 522 F.2d 13, 16 (8th Cir. 1975).

In *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999), the Court wrote: "The ALJ's findings of fact ... are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts."

■ The ALJ, in the case at bar, found that Plaintiff suffers from a number of severe impairments. Tr. at 26. The most significant, however, and the claimed reasons for disability (Tr. at 136) are restless leg syndrome and idiopathic central nervous system hypersomonlence. Tr. at 26. At the administrative hearing, in response to the following hypothetical question, the vocational expert testified that Plaintiff would be able to do a full range of medium, light and sedentary work. Tr. at 96. The ALJ's hypothetical follows:

My first assumption is that we have an individual who is currently 48 years old; she's a female; she has a high school general equivalency diploma; no past relevant work; and she has the following impairments: She has Restless Leg Syndrome, and idiopathic central nervous system hypersomonlence, obesity, depression, status post nasal septum repair, a hiatal hernia with gastrosopagial (sic) reflex (sic), irritable bowel syndrome, recurrent left shoulder bursitis, and non-allergic rhinitis. And as a result of a combination of those impairments, she has the residual functional capacity to perform basic work activities as follows: She could not lift more than 50 pounds, routinely lift 25 pounds; she should not work at unprotected heights or around hazardous moving machinery; she should not be exposed to more than moderate levels of fumes; she is not able to do very complex or technical work, but is able to do more than simple, routine, repetitive work, which does not require very close attention to detail; she does require occasional supervision; and she should not work at more than a regular pace; nor should she work at more than a mild to moderate level of stress.

Tr. at 95. A hypothetical question is sufficient if it sets forth the impairments which are accepted as true by the ALJ. *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985). It is also true, however, that the hypothetical must capture the concrete consequences of the claimant's impairments. *Pickney v. Chater*, 96 F.3d 294, 297 (8th Cir.1996). A hypothetical question which ignores a claimant's limitations cannot constitute substantial evidence upon which to base a denial of benefits. *Baugus v. Secretary of Health & Human Services*, 717 F.2d 443, 447 (8th Cir.1983). The problem with the hypothetical in the case at bar is that it assumes that Plaintiff suffers no limitations from her need for excessive daytime sleep. Although the vocational expert was told to assume that Plaintiff suffers from hypersomonlence, he was also told to assume that Plaintiff could do more than simple, routine, repetitive work, which does not require very close attention to detail, and that she could work at a regular pace. Later, when the vocational expert was asked if there were factors which had not been included in the hypothetical which would affect Plaintiff's ability to work, he responded that if an individual were required to sleep as Plaintiff had testified, no work would be possible. Tr. at 98. In *Ness v. Sullivan*, 904 F.2d 432, 436 (8th Cir.1990), the Court held that failure to include the need for rest periods rendered the hypothetical deficient and "forecloses the use of the vocational expert's testimony to support the Secretary's decision in this case." In an attempt to justify his exclusion of the rest periods from the hypothetical, the ALJ discredited Plaintiff's and her witnesses' testimony on this point because no doctor had ever stated that Plaintiff was required to sleep throughout the day. Tr. at 25. Plaintiffs excessive need for day-time sleep is the precise reason she sought the extensive medical treatment reflected in this record. In the opinion of the Court, the ALJ did not provide an adequate rationale for discrediting Plaintiff's testimony on this point.

On July 19, 1995, Stephen Gruba, M.D., one of Plaintiff's treating physicians, wrote: "Providing she responds to Cylert [a medication which had recently been prescribed] and can stay awake then she will have no limitations on the work related activities you listed. Other than her hypersomnolence, she has no other medical problems." Tr. at 160. The medical records reflect that she did not respond. On August 17, 1995, Stephen B. Smith, M.D., another treating physician, wrote in his office note: "When I saw her last time we cut back on her Lorazepam and Buspar hoping that too many of these sedatives were adding to her problem. Unfortunately she continues to feel poorly despite the addition of extra Ritalin and the removal of these medications.... She remains frustrated over the severity of her problems and I can't say that I blame her. There may be a significant psychological overlay." Tr. at 194. On October 19, 1995, Dr. Smith wrote: "I get the opinion that this woman is depressed but she steadfastly denies that and I wonder how much of sleepiness is related to some psychological problems. At the same time that she tells me she is so fatigued and wiped out, she asks for Buspar because she says that she is anxious and strung out all the time." Dr. Smith concluded his office note: "I will see her back in a couple of months and reassess but if she is not any better I am going to recommend that we look for some psychiatric help." Tr. at 195. At the request of the Social Security Administration, Plaintiff saw Tim Weissinger, M.D., for a psychiatric Evaluation on July 10, 1995. Tr. at 190–191. In his conclusion, Dr. Weissinger wrote: "This is a 46 year-old woman who appears to primarily have a sleep disorder problem which causes her not to get very adequate sleep at night and feel very tired during the day and taking a lot of naps during the day. This limits her ability to perform her household chores although she is able to do routine household chores with some rest periods." Plaintiff told Dr. Weissinger that she needs frequent rest periods and that she does her house work at a fairly slow pace. Tr. at 191. Because there was no improvement in her condition, Plaintiff was seen at the University Of Iowa Hospitals and Clinics in August, 1996. Tr. at 244–47. On August 16,1996, Malcolm Yeh, M.D., of the Department of Neurology at the University, wrote: "Her usual bedtime is 10:30 p.m. and notes that she sleeps soundly throughout the night, arising occasionally only for bathroom purposes.... Her usual awakening time during the Summer is 10:30 a.m. and usually she naps during the day for approximately 4 hours." Tr. at 244.

The Court can find no medical evidence whatsoever to contradict Plaintiff's complaints of excessive need of daytime sleep. Thus, the ALJ's finding that Plaintiff is able to work at a regular pace with a mild to moderate level of stress is not supported by substantial evidence in the record as a whole.

The ALJ proceeded to the fifth step of the sequential evaluation. Thus, the burden of proof was upon the Commissioner to prove, with medical evidence, that Plaintiff has a residual functional capacity to work, and that jobs exist in significant numbers in the national economy that Plaintiff is able to do in her impaired condition. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir.1982) (en banc). The Court in *McCoy*, at 1147, wrote that the residual functional capacity which must be found is not merely the ability to lift weights occasionally in a doctor's office, rather it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world. In this case, the vocational expert testified that real people in the real world are not allowed to take naps at will in competitive work. While it is true that Dr. Smith, on July 6, 1995, wrote that Plaintiff "should be able to perform lifting, carrying, standing, walking, sitting, stooping, climbing, kneeling, crawling, handling, carrying, speaking, traveling" (Tr. at 184), and on October 31, 1995, that Plaintiff "can

remember and understand instruction, carry out instructions and maintain attention, interact appropriately with supervisors" (Tr. at 192), none of these factors address the central issue of Plaintiff's need to sleep during the day. But for the need to sleep an inordinate amount of time, Plaintiff would be able to work. The evidence in this regard is transparently one-sided against the ALJ's decision. *See Bradley v. Bowen,* 660 F.Supp. 276, 279 (W.D.Ark. 1987). As explained above, the ALJ did not provide an adequate basis for discrediting Plaintiff's testimony regarding her need to sleep excessive amounts of time. It must be kept in mind, however, that a credibility determination is not equivalent to proving with medical evidence that a claimant has a residual functional capacity. *Soth v. Shalala,* 827 F.Supp. 1415, 1417 (S.D.Iowa 1993).

## CONCLUSION

Because the Commissioner did not meet his burden of proving with medical evidence that Plaintiff has the residual functional capacity to work in competitive employment, and because Plaintiff's complaints are supported by the medical record, and because the vocational expert testified that Plaintiff's need to sleep during the day precludes competitive employment, a remand to take additional evidence would only delay the receipt of benefits to which Plaintiff is clearly entitled. Therefore, reversal with an award of benefits is the appropriate remedy. *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir.1984).

Defendant's motion to affirm the Commissioner is denied. **This cause is remanded to the Commissioner for computation and payment of benefits.** The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509

U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).

IT IS SO ORDERED.