**Edward J. PADEN, Plaintiff—Appellant,**

v.

**Jo Anne B. BARNHART, Social Security Administration, Defendant—Appellee.**

No. 02–36072.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 3, 2004.*

Decided Feb. 27, 2004.

\* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

David B. Lowry, Esq., Portland, OR, for Plaintiff–Appellant.

Craig J. Casey, Esq., Office of the U.S. Attorney, Mark O. Hatfield U.S. Courthouse, Portland, OR, Stephanie Martz, Esq., Office of the General Counsel, Assistant Regional Counsel, Lucille G. Meis, Esq., Office of General Counsel, Social Security Administration, Seattle, WA, for Defendant–Appellee.

Before: TROTT, PAEZ, and BERZON, Circuit Judges.

## MEMORANDUM **

Edward J. Paden ("Paden") appeals the district court's summary judgment affirming the Commissioner's decision to terminate his social security disability benefits on the basis of an Administrative Law Judge's ("ALJ") finding that he was no longer disabled. We review *de novo* a district court's order affirming the ALJ's decision to deny benefits, but may only set aside a denial of benefits if it is based on legal error or it is not supported by substantial evidence. *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir.2002). As sub-

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

stantial evidence supported the ALJ's findings regarding Paden's medical improvement and residual functional capacity, we affirm on these issues. However, because the ALJ failed to include in the hypothetical questions to the vocational expert Paden's borderline intellectual functioning and need for a supportive work environment, we remand for further proceedings at step eight of the eight-step sequential evaluation process. *See* 20 C.F.R. § 404.1594(f) (explaining the eight-step analytical framework for determining whether a claimant's disability should be terminated).

## I

■ Paden argues that the ALJ's finding at step three regarding medical improvement is not supported by substantial evidence because his condition has not changed since the ALJ originally found him to be legally disabled on December 12, 1992. However, although Paden's 1993 psychiatric examinations revealed that he could not accept criticism or get along with others, Paden's psychiatric examinations in 2000 indicated that he could better control his anger, that he was friendly, cooperative, and likeable, and that he had a full social life. Thus, there was substantial evidence supporting the ALJ's finding that Paden had medically improved.

## II

■ Paden next argues that the ALJ's findings at step seven regarding his residual functional capacity ("RFC") were flawed because the ALJ failed to consider various limitations affecting Paden's general ability to work on a regular and sustained basis. However, the ALJ found that Paden could handle the basic demands of light work. Substantial evidence supported the ALJ's finding that, at the time of re-evaluation, Paden was better able to control his anger, that he could perform simple, routine, and repetitive work, and that he did not suffer from a continued depressive state that would prevent him from working on a sustained basis.

■ Moreover, contrary to Paden's argument, the ALJ did consider the State Agency physician's opinions, as evidenced by the ALJ's finding on fine fingering. The ALJ, however, properly gave less weight to the opinions of the State Agency physician, a nonexamining physician, than to those of Dr. Williams, an examining physician who found that Paden's ability to interact with others was not significantly limited. *See, e.g., Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995) ("[T]he conclusion of a nonexamining expert is generally entitled to less weight than the conclusion of an examining physician."). Thus, we conclude that there was substantial evidence supporting the ALJ's determination that Paden's RFC was sufficient to allow him to perform light work.

## III

■ Finally, Paden challenges the vocational expert's opinion that he could perform work as a flagger, cafeteria attendant, and parking-lot attendant. In particular, Paden contends that the hypothetical questions posed to the vocational expert were incomplete because they did not include his borderline intellectual functioning and need for a supportive work environment. We agree.

An ALJ's "[h]ypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant...." *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir.1989) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988) (emphasis in *Embrey* )). Here, Paden's last full-scale I.Q. test equaled 73 and he was diagnosed by Dr.

Williams with borderline intellectual functioning.[1] The ALJ noted these facts, and found that Paden's borderline intellectual functioning was a "severe impairment[ ]." However, the ALJ failed to include this limitation in the hypothetical questions posed to the vocational expert.

The hypothetical questions also did not include Dr. Williams's finding that Paden needs a supportive work environment. Dr. Williams noted that Paden "could perform some job as long as his supervisors understand his limitations and do not push him beyond his abilities." Dr. Williams further indicated that, although Paden could accept instructions and interact with co-workers and the public, "[c]ertainly he should be in a supportive environment that would not involve him being made fun of for his learning disability." The ALJ recognized this fact, but he failed to include this limitation in his hypothetical questions to the vocational expert.

Both Paden's borderline intellectual functioning and need for a supportive work environment are supported by substantial evidence, and therefore should have been included in the hypothetical questions posed to the vocational expert. Where, as here, hypothetical questions fail to reflect each of the claimant's limitations that are supported by substantial evidence, the expert's answer has no evidentiary value. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984) ("Because neither the hypothetical nor the answer properly set forth all of Gallant's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings."). Accordingly, we reverse and remand so that the ALJ can reformulate the hypothetical questions to the vocational expert to include the limitations noted above.

We remand to the district court with directions to remand to the Commissioner for further proceedings consistent with this disposition.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

---

**1.** We note that out-of-circuit case law supports our finding that borderline intellectual functioning should be included in the hypothetical questions posed to the vocational expert. *See, e.g., Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir.1997) (remanding for vocational expert to consider the borderline intellectual functioning of a claimant with a full-scale I.Q. of 78); *Pickney v. Chater*, 96 F.3d 294, 296–97 (8th Cir.1996) (remanding because ALJ did not instruct vocational expert to consider the borderline intellectual functioning of a claimant with a full-scale I.Q. of 78).