# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2838

_____

Tammy Hulsey,                          *

                                 *

         Appellant,             *

                                 *   Appeal from the United States

    v.                        *   District Court for the

                                 *   Eastern District of Arkansas.

Michael J. Astrue, Commissioner of   *

Social Security Administration,      *

                               *

         Appellee.              *

_____

Submitted: April 14, 2010
Filed: October 15, 2010

_____

Before RILEY, Chief Judge, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Tammy Hulsey appeals the judgment of the district court[1] upholding the Social Security Commissioner's decision to deny her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA"). 42 U.S.C. §§ 1381-1383f. We affirm.

_____

[1]The Honorable Beth Deere, United States Magistrate Judge for the Eastern District of Arkansas, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

## I.

As of her most recent administrative hearing, Hulsey was thirty-nine years old. Her education ended after attending the eighth or ninth grade. She has not worked since 1993, the year in which she claims that she became disabled due to an assortment of maladies. Before the onset of her alleged disability, Hulsey was employed in several jobs, including most recently as a cleaner for a business that had been damaged by a fire. The administrative record shows that Hulsey has a history of treatment for carpal tunnel syndrome, hypertension, headaches, depression, anxiety, and borderline intellectual functioning.

Hulsey's pursuit of SSI benefits has been ongoing for nearly two decades. In April 1993, Hulsey filed the application for SSI benefits at issue in this case.[2] Hulsey claimed in the application that she was disabled due to carpal tunnel syndrome and hypertension. Hulsey requested and received a hearing before an administrative law judge ("ALJ"). The ALJ ruled that Hulsey did not qualify as disabled under the SSA, and thus that she was not entitled to SSI benefits. The Appeals Council vacated the ALJ's decision and remanded the case for evaluation of newly submitted medical records that contained diagnoses of a somatoform disorder and borderline intellectual functioning.[3]

---

[2]Hulsey has filed additional applications seeking SSI benefits. Her second application, which was filed in February 1997, was denied by an ALJ, and the Appeals Council affirmed. In June 1999, Hulsey filed a third application for SSI benefits, which was denied initially and then consolidated for the appeals process with the 1993 application at issue here.

[3]A somatoform disorder is a condition characterized by the presence of physical symptoms that "are not fully explained by a general medical condition, by the direct effects of a substance, or by another mental disorder." *Diagnostic and Statistical Manual of Mental Disorders* 445 (Am. Psychiatric Ass'n ed., 4th ed. 1994). Borderline intellectual functioning is diagnosed in individuals who have an IQ score in the range of 71 to 84. *Id.* at 684.

In February 1995, the ALJ convened a second hearing, after which the ALJ again ruled that Hulsey was not disabled under the SSA. After the Appeals Council denied Hulsey's request for review, Hulsey sought review of the denial of benefits in the district court. The district court remanded the case for further consideration of Hulsey's residual functional capacity.

After an August 1998 hearing, the ALJ ruled that Hulsey was not disabled. The ALJ evaluated Hulsey's claim using the five-step evaluation process found in the social security regulations. 20 C.F.R. § 416.920. At steps one and two, the ALJ found that Hulsey had not engaged in substantial gainful activity since the onset of her claimed disability, and that Hulsey's ailments constituted severe impairments that impacted her ability to perform basic work activities. At step three, the ALJ determined that Hulsey's impairments did not meet or equal an impairment listed in the regulations. The ALJ concluded at step four that Hulsey could return to her past relevant work as a cleaner, binding machine operator, or cashier. In finding that Hulsey could return to past relevant work, the ALJ relied upon a vocational expert's testimony in response to a hypothetical posed by the ALJ that precluded work with frequent bilateral grasping and fingering. Because Hulsey could return to past relevant work, according to the ALJ, she was not disabled under the SSA. *Id.* § 416.920(f). The Appeals Council denied Hulsey's subsequent request for review, and Hulsey sought review in the district court.

In a February 2000 decision, the district court found that the vocational expert's testimony that Hulsey could return to her past work as a cleaner, binding machine operator, or cashier was inconsistent with the physical limitations described in the ALJ's hypothetical, which specifically precluded jobs that involved "frequent" bilateral grasping or bilateral fingering. The court cited the *Dictionary of Occupational Titles* ("DOT"), which stated that each of Hulsey's three prior positions involved either frequent fingering or handling. As a result, the court concluded that Hulsey satisfied her burden at step four of the evaluation process to prove that she

could not return to past relevant work. The court remanded the case to the agency for evaluation under step five, which places the burden on the Commissioner to show that the claimant could perform other jobs available in the national economy. *Id.* § 416.920(g).

In July 2000, the ALJ held a fourth administrative hearing. The ALJ again concluded that Hulsey's impairments did not preclude her from returning to past relevant work, and thus that Hulsey was not disabled. The Appeals Council remanded, because the district court's ruling required the ALJ to evaluate Hulsey's case under step five of the evaluation process.

The ALJ held a fifth administrative hearing in April 2004. At the hearing, the ALJ provided the vocational expert with the following hypothetical.

> I want you to assume that you're dealing with an individual who is the same age as Ms. Hulsey[, w]ith the same educational background and past work experience. Further assume that the individual is limited to light work with the following additional limitations. They [sic] couldn't do any jobs that would require a constant level of repetitive handling. No repetitive bending and stooping. No overhead work. It would have to be work of an unskilled nature involving only superficial interpersonal contact.

In response to the hypothetical, the vocational expert testified that the individual described would be able to perform cashier or housekeeping work available in the national economy. The vocational expert did not specify the DOT classification numbers for the occupations that she identified. On the basis of the vocational expert's testimony, the ALJ concluded that the Commissioner met its burden to show that Hulsey retained the capacity to perform jobs that exist in the national economy, and that Hulsey was not disabled under the SSA.

The ALJ's written opinion discussed the medical evidence in the administrative record, including the evidence of Hulsey's borderline intellectual functioning. The ALJ noted that Drs. Gerald Fowler and George DeRoeck, who examined Hulsey in 1994 and 2004, respectively, each diagnosed Hulsey with borderline intellectual functioning. Dr. Fowler opined that only a blood relative or close family friend could tolerate Hulsey's borderline intellectual functioning and her preoccupation and fear of pain due to her somatoform disorder. The ALJ discounted Dr. Fowler's opinion, finding that it was inconsistent with Dr. Fowler's own clinical notes and was based largely on Hulsey's subjective complaints. Dr. DeRoeck, on the other hand, concluded that Hulsey's ability to function in a work setting was "adequate" with respect to relatively straightforward tasks that require limited social interaction.

After Hulsey filed written exceptions to the ALJ's decision, the Appeals Council assumed jurisdiction over the case. *See* 20 C.F.R. § 416.1484(b)(3). The Appeals Council adopted the ALJ's discussion of the medical evidence. Based on that medical evidence, the Appeals Council concluded that Hulsey "has borderline intellectual functioning which might restrict her from performing detailed or complex work." The Appeals Council disregarded the ALJ's finding that Hulsey could work as a cashier, because the grasping and fingering limitations that precluded her from returning to a cashier position on step four of the evaluation process also precluded her from performing other cashier work on step five. But Hulsey's impairments, according to the Appeals Council, did not prevent her from performing housekeeping work. The Appeals Council therefore ruled that the Commissioner met its burden on step five, and that Hulsey was not disabled.

On appeal to the district court, Hulsey contended that the ALJ's hypothetical question to the vocational expert did not adequately account for Hulsey's borderline intellectual functioning and understated the effects of her other mental impairments. As the district court stated, Hulsey "d[id] not raise any claim in her appeal related to the Appeals Council's analysis of her physical impairments." The court affirmed the

-5-

denial of benefits, ruling that the ALJ appropriately accounted for Hulsey's impairments "by posing a hypothetical to the vocational expert based on a person with the residual functional capacity to perform unskilled work where interpersonal contact is superficial."

## II.

We review *de novo* the district court's decision upholding the denial of social security benefits. We will affirm if the Commissioner's decision is supported by substantial evidence on the record as a whole. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). Substantial evidence means less than a preponderance, but sufficient evidence that a reasonable person would find adequate to support the decision.

A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments. *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005). The hypothetical "need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the concrete consequences of those impairments." *Lacroix v. Barnhart*, 465 F.3d 881, 889 (8th Cir. 2006) (internal quotation omitted). We review the most recent decision of the Appeals Council, which is the Commissioner's final decision denying benefits. 20 C.F.R. § 416.1484(b)(3).

Hulsey first contends that the hypothetical posed by the ALJ to the vocational expert, which the Appeals Council accepted in its decision, did not adequately account for Hulsey's borderline intellectual functioning. Hulsey argues that the hypothetical understated the effect of her borderline intellectual functioning, because limiting Hulsey to unskilled work does not necessarily rule out work that requires the ability to follow detailed instructions. The parties do not dispute, and substantial evidence in the record shows, that Hulsey suffers from borderline intellectual functioning.

Hulsey relies substantially on two decisions of this court. In the first, *Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997), the ALJ found that the claimant suffered from borderline intellectual functioning and other impairments. Despite this finding, the ALJ concluded that the claimant's capacity for the "full range of sedentary work" was not compromised, and thus denied benefits based on the Medical-Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2. We reversed the district court's decision affirming the denial of benefits, reasoning that the ALJ failed to make use of a vocational expert's testimony, and that borderline intellectual functioning "is a significant nonexertional impairment that must be considered by a vocational expert." *Lucy*, 113 F.3d at 908. In the second, *Pickney v. Chater*, 96 F.3d 294 (8th Cir. 1996), substantial evidence showed that the claimant suffered from borderline intellectual functioning. *Id.* at 296-97. The ALJ, however, posed a hypothetical to the vocational expert that described an individual who did not have "any mental limitations." *Id.* at 295 n.1. We reversed the denial of benefits, because the ALJ expressly excluded a proven mental impairment in the hypothetical. *Id.* at 297.

As noted, the ALJ in Hulsey's most recent administrative hearing posed a hypothetical that limited Hulsey to "work of an unskilled nature involving only superficial interpersonal contact." Thus, unlike in *Lucy* or *Pickney*, the ALJ in this case posed a hypothetical that accounted for some degree of mental impairment. The question is whether the hypothetical sufficiently limited the universe of work that Hulsey can perform with borderline intellectual functioning.

According to the regulations, unskilled work "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). Unskilled work is the "least complex type[] of work," SSR 82-41, 1982 WL 31389 (1982), corresponding to a specific vocational preparation (SVP) level of one or two in the DOT. SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000). The SVP level listed for each occupation in the DOT connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work

performance. At SVP level one, an occupation requires only a short demonstration, while level two covers occupations that require more than a short demonstration but not more than one month of vocational preparation. 2 *Dictionary of Occupational Titles* app. C, at 1009 (4th ed. 1991).

Although the ALJ's hypothetical precluded work that requires more than minimal vocational preparation, Hulsey's response is that many unskilled jobs require the ability to follow detailed work instructions. *See Lucy*, 113 F.3d at 909. According to Hulsey, the record shows that she can understand and carry out only simple instructions. Hulsey also points to the Appeals Council's finding that she "has borderline intellectual functioning which might restrict her from performing detailed or complex work."

Each occupation in the DOT is coded with a reasoning development level, which corresponds to the ability to follow instructions and solve problems that is required for satisfactory job performance. 2 *Dictionary of Occupational Titles*, *supra*, app. C, at 1009-11. Only occupations with a reasoning development level of one necessarily involve only simple instructions. At reasoning development level two, occupations might necessitate applying "commonsense understanding to carry out detailed but uninvolved written or oral instructions" and dealing with "problems involving a few concrete variables in or from standardized situations." The occupations at level three, which include the cashier position identified by the vocational expert, might involve applying "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and dealing with "problems involving several concrete variables in or from standardized situations." *Id.* app. C, at 1011.

Even assuming for the sake of argument that Hulsey is unable to perform some unskilled work, the Appeals Council's conclusion that Hulsey could perform housekeeping work is supported by substantial evidence. Hulsey points to six DOT

listings for housekeeping work, and asserts that her physical impairments preclude all but three of those positions – "executive housekeeper" (occupational code number 187.167-046), "housekeeper, home" (301.137-010), and "housekeeper" (321.137-010). Hulsey argues that these three positions have reasoning development levels of five, four, and three, respectively, and that she could not perform such work. *See* 1 *Dictionary of Occupational Titles*, *supra*, at 143, 239, 247. But the DOT lists SVP levels of eight, six, and six, respectively, for these occupations. *Id.* These positions thus do not constitute unskilled work, and the vocational expert was not referring to them as occupations that involved functions within Hulsey's limitations.

Instead, it is evident that the vocational expert had in mind the "cleaner, housekeeping" occupation (323.687-014). This "cleaner, housekeeping" position has an SVP of two and a reasoning development level of one. Unlike the housekeeping positions identified by Hulsey, the "cleaner, housekeeping" position constitutes unskilled work – *i.e.*, it has an SVP level of one or two – and it carries the lowest possible reasoning development level in the DOT. *Id.* at 248. The Appeals Council did not fail to consider Hulsey's borderline intellectual functioning in concluding that she could perform such work.

Hulsey contends that the district court in February 2000 ruled that she could not return to past relevant work as a housekeeper and, in doing so, cited the "cleaner, housekeeping" listing in the DOT. The district court found that this housekeeping position involved "frequent" handling and thus was inconsistent with the physical limitations described in the ALJ's hypothetical. The court ruled that Hulsey met her burden under step four of the disability evaluation process, and remanded for further proceedings on step five. According to Hulsey, the district court in its most recent opinion violated the law-of-the-case doctrine by determining that Hulsey could perform the work of a housekeeper under the same DOT listing.

The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to administrative agencies on remand. *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997). Although the law-of-the-case doctrine is not a jurisdictional limit, we have explained that the doctrine is "salutary" and "should be departed from only after careful consideration on situations arising in specific cases." *Otten v. Stonewall Ins. Co.*, 538 F.2d 210, 212 (8th Cir. 1976) (internal quotation and citation omitted). But there are two difficulties with Hulsey's reliance on the doctrine to criticize the district court's ruling.

First, Hulsey raises the law-of-the-case doctrine for the first time on appeal, and she therefore waived the point in the district court. *Clarke v. Bowen*, 843 F.2d 271, 273 (8th Cir. 1988). Hulsey attempts to avoid waiver by asserting that the district court (and not the ALJ or Appeals Council) violated the law-of-the-case doctrine, because only the district court expressly cited the DOT's "cleaner, housekeeping" position in its decision. But as discussed, this same "cleaner, housekeeping" position necessarily provided the basis for the vocational expert's testimony, and in turn the foundation for the decisions of the ALJ and Appeals Council. The district court was well positioned to determine whether the Appeals Council's reliance on the "cleaner, housekeeper" position violated the February 2000 remand order, *see Brachtel*, 132 F.3d at 420, but Hulsey failed to raise the issue.

Even if we ignored the waiver, the doctrine does not call for reversal, because the district court did not decide in February 2000 that Hulsey's physical impairments, as defined by the Appeals Council in its most recent ruling, precluded her from housekeeping work. *See id.* The district court's conclusion in 2000 rested instead on the inconsistency between the impairments described in the ALJ's hypothetical and the physical requirements of the position identified by the vocational expert. But the hypothetical posed by the ALJ during the 1998 hearing and at issue in the district court's 2000 decision was different from the hypothetical formulated based on the

ALJ's findings in 2004. Whereas the 1998 hypothetical precluded "frequent" handling, the hypothetical posed at Hulsey's most recent administrative hearing precluded only "constant" handling. A "constant" activity or condition exists two-thirds or more of the time in an occupation; a "frequent" activity or condition exists between one-third and two-thirds of the time. 2 *Dictionary of Occupational Titles*, *supra*, app. C, at 1013. The more recent findings were thus less restrictive than those at issue in the district court's ruling in 2000.

Hulsey does not claim that the hypothetical posed by the ALJ at the latest hearing described her physical limitations inadequately, or that the ALJ was bound to pose the same hypothetical that was used in the previous hearing. The record before the ALJ in 2004 included new and different evidence regarding Hulsey's condition, and the law-of-the-case doctrine does not preclude a different conclusion if the adjudicator is presented with substantially different evidence. *See Yankton Sioux Tribe v. Podhradsky*, 606 F.3d 994, 1005 (8th Cir. 2010), *MacKenzie v. Apfel*, 166 F.3d 1218, 1998 WL 894568, at *3 (9th Cir. 1998). The record, for example, contains a medical evaluation from 2004 stating that Hulsey had "normal mobility, no redness, erythema or swelling and normal pinch strength" in her hands. The ALJ in 2004 properly posed a revised hypothetical based on its own evaluation of the testimony and the medical evidence available at that time. The requirements for the "cleaner, housekeeping" position are not incompatible with the impairments described in the ALJ's most recent hypothetical.

Hulsey's final argument is that the hypothetical did not account for the work limitations caused by her other mental impairments, which include anxiety, depression, and a somatoform disorder. We disagree. As discussed, Hulsey's own account of her daily routine indicates that mental impairments have not prevented her from tending to her children or running a household. Dr. Crupie's notes state that Hulsey had only "some impairment" of her adaptive activities due to self-preoccupation and somatoform disorder, and that the appropriateness and

-11-

effectiveness of her functions were "mildly impaired." Dr. DeRoeck concluded that despite her borderline intellectual functioning and other impairments, Hulsey was capable of functioning adequately in a work environment with limited social interaction and relatively straightforward tasks. Dr. Mark Baltz, a treating physician, reported on several occasions that Hulsey's anxiety and depression responded well to medication, thus suggesting that those impairments are not disabling. *Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010).

The ALJ's hypothetical, which limited Hulsey to "work of an unskilled nature involving only superficial interpersonal contact," adequately described the consequences of Hulsey's mental impairments. Accordingly, we conclude that the Appeals Council's decision denying benefits is supported by substantial evidence on the record as a whole.

* * *

The judgment of the district court is affirmed.

_____